**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
Michael E. Thompson, Esq., SBN 266275
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:   (310) 893-6200
Facsimile:   (310) 988-2930
Email:       deborah@prosperlaw.com

Attorneys for Plaintiffs,
Peter Bos and Julie Bos

FILED
CLERK, U.S. DISTRICT COURT

DEC 16 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SACV11-1951DOC(ANx)

| | |
|---|---|
| PETER BOS, an individual, and JULIE BOS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE BEAR STEARNS MORTGAGE FUNDING TRUST 2007-AR5; NATIONAL DEFAULT SERVICING CORPORATION; JP MORGAN CHASE, NA, and Does 1 – 10, inclusive,<br><br>Defendants. | Case No.<br>**COMPLAINT FOR:**<br>1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]**<br>2. **NEGLIGENCE**<br>3. **QUASI CONTRACT**<br>4. **VIOLATION OF 15 U.S.C. § 1692e**<br>5. **VIOLATION OF 12 U.S.C. § 2605**<br>6. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.**<br>7. **ACCOUNTING**<br>8. **BREACH OF CONTRACT**<br>9. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>10. **WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE**<br>11. **TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE**<br>**DEMAND FOR JURY TRIAL** |

1

#### TABLE OF CONTENTS

2     I.    STATEMENT OF THE CASE........................................................................3

3     II.   JURISDICTION, VENUE, AND PARTIES....................................................4

4     III.  FACTUAL ALLEGATIONS...........................................................................6

5     IV.   FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE STATUS OF

6           DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]................................12

7     V.    SECOND CAUSE OF ACTION – NEGLIGENCE.........................................14

8     VI.   THIRD CAUSE OF ACTION – QUASI CONTRACT.....................................15

9     VII.  FOURTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e………...............16

10    VIII. FIFTH CAUSE OF ACTION –  VIOLATION OF 12 U.S.C. § 2605………...............22

11    IX.   SIXTH CAUSE OF ACTION – BUS. AND PROF. CODE SECTION 17200, ET SEQ......24

12    X.    SEVENTH CAUSE OF ACTION – ACCOUNTING.......................................28

13    XI.   EIGHTH CAUSE OF ACTION – BREACH OF CONTRACT............................30

14    XII.  NINTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

15          AND FAIR DEALING.....................................................................32

16    XIII. TENTH CAUSE OF ACTION – WRONGFUL FORECLOSURE AND TO SET ASIDE

17          TRUSTEE'S SALE.......................................................................35

18    XIV.  ELEVENTH CAUSE OF ACTION – TO VOID OR CANCEL TRUSTEE'S DEED UPON

19          SALE……………………………………………………….......................38

20

21

22

23

24

25

26

27

28

# COMPLAINT

COMES NOW Plaintiffs Peter Bos ("Mr. Bos") and Julie Bos ("Mrs. Bos") (collectively, the "Plaintiffs"), by and through their counsel, for their Complaint against Defendants JP Morgan Chase (in its capacity as purported mortgage servicer) (hereinafter "**JPMorgan**"), National Default Servicing Corporation (in its capacity as purported foreclosing trustee) (hereinafter "**National**"), and Wells Fargo Bank, N.A. as Trustee for the Bear Stearns Mortgage Funding Trust 2007-AR5 (in its capacity as purported beneficiary and assignee of Plaintiffs' Note and Mortgage) (hereinafter "**Wells Fargo**") (collectively "Defendants"), plead as follows:

## I.   STATEMENT OF THE CASE

1.     On August 30, 2006, Plaintiffs executed a promissory note ("Note") in favor of Southstar Funding, LLC, in the amount of $464,000 secured by a deed of trust ("Deed of Trust" or "Mortgage") for the finance of real property located at 933 W. Rainbow Falls Way, Orange, California 92865.  Subsequently, Defendants' failure to assign or transfer Plaintiffs' Note to Wells Fargo resulted in Defendants' inability to collect on the Note and enforce the Deed of Trust.  Despite Defendants' failure to perfect a security interest, Wells Fargo and its agents have attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so.  In addition to violating the Fair Debt Collection Practices and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the Orange County Recorder's Office.  Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of California Penal Code section 532(f)(a)(4).[1]  Through this action, Plaintiffs seek damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected

---

[1] Defendants' recording of the Substitution of Trustee and the Corporation Assignment of Deed of Trust violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

1   security interest in the Note and Deed of Trust (collectively referred to as "Loan").

2   Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and

3   Deed of Trust.

4         2.     In the alternative, if the Court finds that any of the Defendants have an

5   enforceable security interest in either the Note or Deed of Trust, Plaintiffs maintain that

6   Defendants have breached Section 2 of the Deed of Trust and the Implied Covenant of

7   Good Faith and Fair Dealing by charging improper fees and miscalculating and

8   misapplying payments to offset both principal and interest, in addition to the statutory

9   provisions listed above.

10   **II.    JURISDICTION, VENUE, AND PARTIES**

11         3.     This Court has original jurisdiction over the claims in this action based on

12   28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692e, 12 U.S.C. § 2605, and 42

13   U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to

14   address the deprivation of rights secured by federal law.

15         4.     This Court also has supplemental jurisdiction over the pendant state law

16   claims because they form a part of the same case or controversy under Article III of the

17   United States Constitution, pursuant to 28 U.S.C. § 1367.

18         5.     The unlawful conduct, illegal practices, and acts complained of and alleged

19   in this Complaint were all committed in the Central District of California and involved

20   real property that is located in the Central District of California.  Therefore, venue

21   properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

22         6.     Plaintiffs are now, and at all times mentioned herein, individuals residing in

23   the County of Orange, in the State of California.  At all times relevant to this action,

24   Plaintiffs have owned real property commonly known as 933 W. Rainbow Falls Way,

25   Orange, California 92865  (the "Property"), further described as Assessor's Parcel

26   Number 374-731-45, with the following description:

27   //

28   //

PARCEL 1:

LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGREE OVER THE PRIVATE STREETS SHOWN AS LOTS A AND B OF TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDED OF ORANGE COUNTY.

7.      At all relevant times, Wells Fargo Bank, N.A. is a national association organized under the laws of the United States with its main office in California.

8.      At all relevant times, JPMorgan Chase Bank, N.A., as Successor Servicer to EMC Mortgage, LLC, f/k/a EMC Mortgage Corporation, is a national association organized under the laws of the United States with its main office in Columbus, Ohio.

9.      At all relevant times, National Default Servicing Corporation is an Arizona corporation with its principal place of business in Arizona.

10.     Plaintiffs are ignorant of the true identity and capacity of Defendants designated as Does 1 - 10, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted.  However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiffs.  Plaintiffs further allege on information and belief that each such designated Defendant acted, and acts, as the authorized agent, representative, and associate of the other Defendants in doing the things alleged herein.

11.     Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

1    12.    Any allegation about acts of any corporate or other business Defendant(s)
2    means that the corporation or other business did the acts alleged through its officers,
3    directors, employees, agents and/or representatives while they were acting within the
4    actual or ostensible scope of their authority.

5    13.    At all relevant times, each Defendant committed the acts, caused or
6    directed others to commit the acts, or permitted others to commit the acts alleged in this
7    Complaint.  Additionally, some or all of the Defendants acted as the agent of the other
8    Defendants, and all of the Defendants acted within the scope of their agency if acting as
9    an agent of the other.

10    14.    At all relevant times, each Defendant knew or realized that the other
11    Defendants were engaging in or planned to engage in the violations of law alleged in
12    this Complaint.  Knowing or realizing that the other Defendants were engaging in or
13    planning to engage in unlawful conduct, each Defendant nevertheless facilitated the
14    commission of those unlawful acts.  Each Defendant intended to and did encourage,
15    facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted
16    the other Defendants in the unlawful conduct.

17    **III.    FACTUAL ALLEGATIONS**

18    15.     On or about August 30, 2006, Mr. Bos and Mrs. Bos executed a Note and
19    Deed of Trust in favor of Southstar Funding, LLC (hereinafter "Southstar"), obtaining a
20    Loan on secured by the Subject Property.

21    16.    On information and belief, Plaintiffs allege that sometime after the
22    origination of their Loan, Southstar sold their Loan to another entity or entities.  Those
23    entities are currently unknown but will be identified through discovery.

24    17.    Plaintiffs allege that these unknown entities and Defendants were involved
25    in an attempt to securitize their Loan into the Structured Asset Mortgage Investments II
26    Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through
27    Certificates, Series 2007-AR5 ("Bear Stearns Trust").  *See* **Exhibit "A",** attached hereto
28    is a securitization flow chart depicting the securitization process.  In order for Plaintiffs'

1    Mortgage to be a part of the Bear Stearns Trust, the entities involved were required to

2    follow various agreements and established laws, including the Trust Agreement that

3    governed the creation of the Trust.  Plaintiffs allege the entities involved in the

4    attempted securitization of Plaintiffs' Loan failed to adhere to the requirements of the

5    Trust Agreement necessary to properly assign the mortgage loan into the Trust.  As a

6    result, Plaintiffs' Loan was not assigned to the Bear Stearns Trust and is therefore not

7    part of the Trust res.  This fatal defect renders Defendants third-party strangers to the

8    underlying debt obligation without the power or right to demand payment, declare

9    default, negotiate their Loan, or foreclose on their Property.  Although Defendants are

10   aware of this fact, they have and continue to act as if they have authority to demand

11   payment, declare default, negotiate their Loan, and foreclose on their Property.

12   Plaintiffs specifically dispute that the Loan is part of the Bear Stearns Trust.

13        18.    Plaintiffs initiated loan modification negotiation efforts with JPMorgan

14   after experiencing unforeseen financial hardship.  Plaintiffs believed their lender would

15   be willing to accept their payments because they were willing to tender unconditionally,

16   but needed the monthly payments restructured to reflect the downturn in their monthly

17   gross income.  At the time, Plaintiffs relied on the representations made by Defendants

18   that the lender was their true creditor with the power to collect payment and modify their

19   loan.  After months of negotiation, follow up phone calls and resubmitting documents

20   many times over, the Plaintiffs were told they did not qualify and were denied a loan

21   modification.  Since then, Plaintiffs have learned that none of the Defendants have any

22   legal or corporate authority to engage in debt collection activities against them.

23        19.    Plaintiffs' investigation has confirmed that there was an **attempt** to

24   securitize the Mortgage by assigning and transferring the Mortgage into the Bear Stearns

25   Trust, but the mortgage loan was never actually assigned and transferred to the Bear

26   Stearns Trust.

27        20.    In fact, Plaintiffs allege that the Mortgage was never assigned or transferred

28   to any of the parties involved in the securitization process.  Specifically, Plaintiffs allege

1    that their Note and Mortgage were never assigned to the Sponsor, Depositor, the Bear

2    Stearns Trust, or any of the Defendants as required by the Trust Agreement (a.k.a. the

3    Pooling and Servicing Agreement).

4        21.    Plaintiffs' information and belief is based on (1) a title report and analysis

5    of the Property's county records; (2) direct written and oral communication with

6    Defendants; (3) their counsel's research, experience, and extensive review of

7    depositions, case law, amicus briefs, correspondence, news articles, reports, complaints

8    by Attorneys General from various states, and publicly available securitization

9    documents and practices; (4) a review of the purported "Corporation Assignment of

10    Deed of Trust," executed by "Greg Allen"; and (5) an audit of Wells Fargo's filings with

11    the Securities and Exchange Commission ("SEC"), including Wells Fargo's 424B5

12    Prospectus and Pooling and Servicing Agreement ("PSA").

13        22.    Plaintiffs' information and belief is further based on a Securitization Audit

14    of her Note and Mortgage that they commissioned in order to help determine (1) the

15    owner of their Loan, and (2) the secured/unsecured status of their Note and Mortgage.

16        23.    Based on the findings of the Audit, Plaintiffs believe and allege thereon that

17    their Note was supposed to be properly securitized as a mortgage-backed security that is,

18    "pooled" together in a trust pool. The trust is regulated by New York Estates, Powers &

19    Trust Law, specifically § 7-2.4. Plaintiffs allege that their Note was *not* properly

20    securitized and that the Bear Stearns Trust has no legal, equitable, or monetary interest

21    in their Promissory Note such that it can demand payment from them. Further, after

22    conducting the Securitization Audit of Plaintiffs' chain of title and Wells Fargo's PSA,

23    it was determined that Plaintiffs' Note and Mortgage were not properly conveyed into

24    the Trust (if it was ever properly formed) because (1) the beneficial interest in Plaintiffs'

25    Note and Mortgage were not effectively assigned, granted, or transferred to the Sponsor

26    or Depositor (who were supposed to convey Plaintiffs' Note and Mortgage to the Trust)

27    prior to the Closing Date of the Trust and, (2) Wells Fargo failed to perfect the title to

28    Plaintiffs' Note and Mortgage by not *strictly* following the requirements of the PSA and

1    other laws, regulations, and agreements that govern the administration of the Trust. As

2    the purported Trustee of the Trust, Wells Fargo cannot take action which is not

3    authorized by the agreements that created and govern the Trust. Wells Fargo's attempt

4    to acquire an interest in Plaintiffs' Loan after the Closing Date indicated in the PSA is

5    an ultra vires act that is violation of the Trust Agreement (i.e., the PSA).

6         24.    Plaintiffs allege that the Mortgage was not properly assigned to the Bear

7    Stearns Trust within 180 days of June 29, 2007, the required "Closing Date," as set forth

8    in the Trust Agreement. The "Closing Date" is the date by which all of the notes and

9    mortgages must be transferred into the Bear Stearns Trust in order for the mortgage loan

10   to be a part of the trust res. As such, Plaintiffs' Loan was never, and has never been,

11   part of the Bear Stearns Trust res. *See* **Exhibit "B"**, attached hereto is a true and correct

12   copy of sections 2.01 and 2.02 of the Trust Agreement containing these important

13   requirements. As such, Plaintiffs' Loan was never, and has never been, part of the Bear

14   Stearns Trust res.

15        25.    Section 2.01 of the PSA outlines how mortgage loans are to be conveyed

16   into the securitized mortgage trust. Specifically, in connection with any assignment,

17   Section 2.01(b) requires:

18

19        In connection with the above transfer and assignment, the Sponsor
          hereby deposits with the Trustee or the Custodian, as its agent, with
20        respect to each Mortgage Loan:
              (i) the original Mortgage Note, endorsed without recourse (A) to
21        the order of the Trustee or in blank or (B) in the case of a
          Mortgage Loan registered on the MERS system, in blank, and in
22        each case showing an unbroken chain of endorsements from the
          originator thereof to the Person endorsing it, or lost note affidavit
          together with a copy of the related Mort-gage Note,
23         (iii) unless the Mortgage Loan is a MOM Loan, a certified copy of
          the assignment (which may be in the form of a blanket assignment
24        if permitted in the jurisdiction in which the Mortgaged Property is
          located) in blank or to "Wells Fargo Bank, National Association,
25        as Trus-tee", with evidence of recording with respect to each
          Mortgage Loan in the name of the Trus-tee thereon (or if clause
26        (w) in the proviso below applies or for Mortgage Loans with
          respect to which the related Mortgaged Property is located in a
27        state other than Maryland, Tennessee, South Carolina, Mississippi
          and Florida, or an Opinion of Counsel has been provided as set
28        forth in this Section 2.01(b), shall be in recordable form),

...

(iv) all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon

26.     In further violation of Section 2.01 of the Trust agreement, Defendants failed to deposit specific documents, such as all endorsed promissory notes, the original recorded mortgage, and an assignment to the Trustee with the Custodian of Records of the Bear Stearns Trust.  These documents were required to be deposited in order to complete the assignment and transfer of Plaintiffs' Note and Mortgage to the Trust.

27.     Despite this failure to assign, transfer, and grant Plaintiffs' Mortgage to Wells Fargo, Defendants have made numerous attempts to collect on Plaintiffs' mortgage and have now resorted to cover-up this fatal defect by executing and recording a fabricated Corporation Assignment of Deed of Trust ("Assignment").

28.     The Assignment was recorded on September 17, 2010, and executed by "Greg Allen," purportedly as "Vice President" of Mortgage Electronic Registration Systems, Inc. ("MERS").  This Assignment allege that for "Value Received" MERS granted, assigned, and transferred to Wells Fargo all beneficial interest in the Deed of Trust, together with "the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust."  Plaintiffs allege that no such transfer ever occurred, and that Greg Allen lacked the corporate authority to sign on behalf of MERS.  Plaintiffs allege, on information and belief, that Defendant Wells Fargo and/or JPMorgan instructed either Greg Allen, or another agent who forged Greg Allen's signature, to execute the Assignment in order to mislead Plaintiffs into believing Wells Fargo was assigned the interest in their Note and Mortgage.  Defendant Wells Fargo and/or JPMorgan acted with the intent to illegally collect Plaintiffs' payments with the knowledge that the Assignment would not in fact legally grant, assign, or transfer Plaintiffs' interest to Wells Fargo.

1       29.   On or around September 7, 2011, after the initial investigation, Plaintiffs

2   sent a Qualified Written Request ("QWR") to JPMorgan pursuant to the Real Estate

3   Settlement Procedures Act, 12 U.S.C. § 2605(e), in which they advised JPMorgan that

4   they believed their account was in error due to, among other things, improper fees and

5   improper allocation of payments.  The QWR also requested information regarding their

6   loan.  *See* **Exhibit "C,"** attached hereto is a true and correct copy of Plaintiffs' Qualified

7   Written Request.  The Dodd-Frank Wall Street Reform and Consumer Protection Act

8   ("Dodd-Frank Act")[2] requires that the servicer provide an acknowledgement of receipt

9   of the QWR within five days of receipt and to substantively respond within thirty

10  business days of receipt.  In violation of RESPA and the Dodd-Frank Act, JPMorgan

11  failed to provide a complete response.  *See* **Exhibit "D,"** attached hereto is a true and

12  correct copy of a letter from counsel for JPMorgan purporting to respond to Plaintiffs'

13  QWR.  Although the letter promises to provide documents which relate to Plaintiffs'

14  Loan, Plaintiffs have received no such documents.

15      30.   Plaintiffs do not dispute that they owes money on their mortgage

16  obligation.  Rather, Plaintiffs disputes the amount owed and seeks the Court's assistance

17  in identifying the true creditor entitled to payment.

18      31.   Plaintiffs have been paying the wrong creditor and all payments made to

19  the Bear Stearns Trust must be disgorged and refunded.

20      32.   Plaintiffs have been damaged as their credit and credit score were severely

21  damaged.

---

[2] The Dodd-Frank Act was signed into law on July 21, 2010.  The Act amended several statutes including 12 U.S.C. § 2605.  The Act amended 12 U.S.C. § 2605 by shortening the deadline to acknowledge a QWR from fifteen days to only five days and shortening the substantive response deadline from sixty days to thirty days.  There is a fifteen day extension allowed if the borrower is notified of the extension and the reasons for the delay.  In addition, the Dodd-Frank Act requires a servicer of a federally related mortgage to "respond to a QWR within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." H.R. 4173 section 1463(a).  The Dodd-Frank Act provides available damages to an individual for failing to respond to a QWR request.  Available damages were increased from actual damages plus $1,000 to actual damages plus $2000.  The Dodd-Frank Act also prohibits various servicing practices and made a few changes to TILA.

1    33.    The title to Plaintiffs' Property has been slandered, clouded, and its

2    salability has been rendered unmarketable.

3    34.    Plaintiffs must seek the Court's assistance to identify their true creditor as

4    they risks not obtaining clear title to this property should they be able to workout a

5    payment plan or forbearance.

6    35.    Plaintiffs do not know who the current beneficiary of their Note and

7    Mortgage actually is, such that they are now subject to double financial jeopardy.

8    36.    Plaintiffs are not required to allege a credible offer of tender because they

9    attack the validity of the underlying debt, not mere technical discrepancies in the

10   foreclosure process.[3]

11   **FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE**

12   **STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]**

13   **[Against All Defendants and Doe Defendants]**

14   37.    Plaintiffs hereby incorporate by reference each and every one of the

15   preceding paragraphs as if the same were fully set forth herein.

16   38.    Section 2201(a) of Title 28 of the United States Code states:

17
18   In a case of actual controversy within its jurisdiction, except
     with respect to Federal taxes other than actions brought under
     section 7428 of the Internal Revenue Code of 1986, a
19   proceeding under section 505 or 1146 of title 11, or in any civil
     action involving an antidumping or countervailing duty
20   proceeding regarding a class or kind of merchandise of a free
     trade area country (as defined in section 516A(f)(10) of the
21   Tariff Act of 1930), as determined by the administering

22   ────────────────────

23   [3] A tender is *not* required when the action attacks the validity of the underlying debt because
     the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration*
24   *Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D.Cal June 24, 2011) (emphasis
     added) citing *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman,* 148 Cal. App. 2d
25   558, 564 (1957). *See also Foulkrod v. Wells Fargo Financial California Inc.,* No. CV 11-732-GHK
     (AJWx) (C.D. Cal. May 31. 2011) ("…requiring plaintiff to tender the amount due on his loan at this
26   time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the
     loan."). In light of the fact that Plaintiffs contests the legitimacy of the Defendants' claim to the
27   mortgage payments, it would be *illogical and inequitable* to require Plaintiffs to actually tender. *See*
     *Vogan v. Wells Fargo Bank,* No. CV 11-2098-JAM-KJN, at *14-15 (E.D. Cal. Nov. 17, 2011).
28

authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

39.     Section 2202 of Title 28 of the United States Code states:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.[4]

40.     Plaintiffs allege that Wells Fargo does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

41.     On or around November 18, 2009, Defendants claimed they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiffs' Note, Deed of Trust, and Property.  Plaintiffs dispute this fact.

42.     Thus, the competing allegations made by Plaintiffs and Defendants, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.[5]

43.     In addition, the harm by Defendants is ongoing and includes the imminent initiation of eviction proceedings against Plaintiffs.  Therefore, as this claim relates to future harm, Plaintiffs' declaratory relief claim is cognizable as an independent cause of action.[6]

---

[4] It is axiomatic that a cause of action for declaratory relief serves the purpose of adjudicating *future* rights and liabilities between parties. *See Cardellini v. Casey*, 181 Cal. App. 3d 389 (1986) [Emphasis added]; *Bachis v. State Farm Mutual Auto. Ins. Co.*, 265 Cal. App. 2d 722 (1968).

[5] "Declaratory relief is only appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

[6] *See Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.").

44.     Accordingly, Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants have any right or interest in Plaintiffs' Note, Deed of Trust, or the Property.

45.     Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiffs will be denied the opportunity to identify their true and current creditor/lender and negotiate with them; (2) they will be denied the right to conduct discovery and have Wells Fargo's and/or JPMorgan's claims verified by a custodian of records who has personal knowledge of the Loan and all transactions related to it; and (3) they will be denied the opportunity to discover the true amount they still owes minus any illegal costs, fees, and charges.

46.     Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Wells Fargo's claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right, title, or interest in Plaintiffs' Property.

47.     Furthermore, the conduct of Wells Fargo, JPMorgan, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### [Against Wells Fargo, JPMorgan, and Doe Defendants]

48.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

49.     At all times relevant herein, JPMorgan was acting as a purported agent for Wells Fargo.  Wells Fargo and/or JPMorgan formed an unconventional relationship with Plaintiffs when they chose to take part in a new era of securitization of mortgage loans. Wells Fargo is no longer a bank simply holding the interest in Plaintiffs' Note and

1  Mortgage, but rather now a trustee for a trust which holds the benefit of Plaintiffs' Note

2  and Mortgage for the investors in the trust.

3      50.    Wells Fargo and JPMorgan, have a duty to exercise reasonable care[7] and

4  skill to follow California law with regard to enforcement of monetary obligations, and to

5  refrain from taking or failing to take any action against Plaintiffs that they did not have

6  the legal authority to do.  This includes enforcing the Note and Deed of Trust by

7  collecting or demanding mortgage payments when they do not have the right to enforce

8  the obligation, causing the Plaintiffs to overpay in interest, making derogatory credit

9  reports to credit bureaus, and failing to keep an accurate accounting of Plaintiffs'

10 mortgage payments, credits, and debits (if JPMorgan is in fact the legally authorized

11 mortgage servicer for Plaintiffs).

12     51.    Wells Fargo and JPMorgan have a duty to exercise reasonable care and

13 skill to refrain from taking any action against Plaintiffs that they do not have the legal

14 authority to do.  As a direct and proximate result of the reckless negligence, utter

15 carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to

16 Plaintiffs' Property has been rendered unmarketable and fatally defective and has caused

17 Plaintiffs to lose saleable title to the subject property.

18     52.    Wells Fargo and/or JPMorgan breached that duty when they failed to

19 follow the guidelines established in the PSA requiring the transfer of the Note and Deed

20 of Trust into the Bear Stearns Trust by the Closing Date.

21     53.    As a direct and proximate result of the negligence and carelessness of the

22 Defendants as set forth above, Plaintiffs suffered, and continues to suffer, general and

23 special damages in an amount to be determined at trial, including attorneys' fees and

24

25     [7] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed.*
26 *Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991).  However, a bank may be liable in
   negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186
27 Cal. App. 4th 727, 741 (2010).  Additionally, a bank may be liable for aiding and abetting a tort when
   it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided
28 in the commission of the tort. *Id.* citing *Casey v. Wells Fargo Nat. Assn.*, 127 Cal. App. 4th 1138,
   1144-45).

1    costs of bringing suit to dispute, validate, and challenge said Defendants' purported

2    rights to enforce their debt obligation against them.

3                    **THIRD CAUSE OF ACTION – QUASI CONTRACT**

4                    **[Against Wells Fargo, JPMorgan, and Doe Defendants]**

5          54.    Plaintiffs hereby incorporate by reference each and every one of the

6    preceding paragraphs as if the same were fully set forth herein.

7          55.    Wells Fargo attempted but failed to become a party to the Note and Deed of

8    Trust when it was purportedly assigned Southstar's interest in Plaintiffs' Note and Deed

9    of Trust.  Wells Fargo and/or JPMorgan demanded monthly mortgage payments from

10   Plaintiffs starting in August 30, 2006 and continued to collect payments from Plaintiffs

11   for approximately five years.  Plaintiffs reasonably relied upon Wells Fargo and/or

12   JPMorgan's assertion that they were entitled to payments.

13         56.    Wells Fargo and/or JPMorgan knowingly accepted payments and retained

14   them for their own use knowing that Wells Fargo and/or JPMorgan did not acquire an

15   interest in Plaintiffs' Note, such that they could accept or keep Plaintiffs' payments.  It

16   would be inequitable for Wells Fargo and/or JPMorgan to retain the payments it

17   received from Plaintiffs which they did not have legal authority to collect.  The

18   equitable remedy of restitution when unjust enrichment has occurred is an obligation

19   created by the law without regard to the intention of the parties, and is designed to

20   restore the aggrieved party to their or her former position by return of the thing or its

21   equivalent in money.

22         57.    Section 23 of the Deed of Trust states that: "Upon payment of all sums

23   secured by this Security Instrument, Lender shall request Trustee to reconvey the

24   Property and shall surrender this Security Instrument and all notes evidencing debt

25   secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property

26   without warranty to the person or persons legally entitled to it."

27         58.    The obligations to Southstar under the Deed of Trust were fulfilled when

28   Southstar received the balance on the Note as proceeds of the sale of Plaintiffs' Note and

1  Mortgage to a presently unknown entity.  Wells Fargo and/or JPMorgan have been

2  unjustly enriched by collecting monthly payments from Plaintiffs when they have no

3  interest their Note or Deed of Trust.

4      59.   Plaintiffs seek restitution for any payments they made to Wells Fargo and

5  JPMorgan that were not paid to the lender or beneficiary, if any.

6           **FOURTH CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e**

7               **[Against Wells Fargo and Doe Defendants]**

8      60.   Plaintiffs hereby incorporate by reference each and every one of the

9  preceding paragraphs as if the same were fully set forth herein.

10     61.   Defendant Wells Fargo, acting as the trustee of the Bear Stearns Trust, is in

11  the business where the principal purpose is to collect debts on behalf of the investors in

12  the Bear Stearns Trust.  Wells Fargo attempted to collect Plaintiffs' debt obligation on

13  behalf of the Bear Stearns Trust investors and thus is a debt collector pursuant to the

14  Federal Debt Collection Practices Act ("FDCPA").  "The term 'debt collector' means

15  any person who uses any instrumentality of interstate commerce or the mails in any

16  business the principal purpose of which is the collection of any debts, or who regularly

17  collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

18  owed or due another." 15 U.S.C. § 1692a(6).

19     62.   Federal law prohibits the use of "any false, deceptive, or misleading

20  representation or means in connection with the collection of any debt… including the

21  false representation of… the character, amount, or legal status of any debt… and the

22  threat to take any action that cannot legally be taken…" 15 U.S.C. §1692e(2)(A), (5).

23     63.   Wells Fargo attempted to collect on the Note under false pretenses, namely

24  that it was assigned Plaintiffs' debt when in fact it was not.

25     64.   Wells Fargo threatened to take actions, namely engaging in collection

26  activities, that cannot legally be taken by it.

27

28

65.    As alleged herein, Plaintiffs' Note was not properly transferred to Wells Fargo, who sought to cause its purported authorized agents, including JPMorgan, to collect mortgage payments and engage in other unlawful collection practices.

66.    On information and belief, Wells Fargo does not have a perfected security interest in Plaintiffs' Note such that it can enforce Plaintiffs' obligation or collect mortgage payments.

67.    Plaintiffs allege that Wells Fargo falsely represented the status of Plaintiffs' debt and Wells Fargo's and its agents' ability to enforce Plaintiffs' debt obligation, in which they have no pecuniary, equitable, or legal interest.

68.    The conduct described above by Wells Fargo was malicious because Wells Fargo and its agents knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Wells Fargo and its agents continued to demand and collect Plaintiffs' mortgage payments.

69.    On information and belief, Wells Fargo engaged in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the mortgage Loan, Wells Fargo failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

70.    On information and belief, at all times material, Wells Fargo had, and has, actual knowledge that Plaintiffs' account was not accurate, but that Plaintiffs would continue to make further payments based on Defendants' inaccurate account.  Plaintiffs made payments based on these improper, inaccurate, and fraudulent representations.

71.    The foregoing acts and omissions of Wells Fargo and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiffs.

72.    Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692e because Wells Fargo and its agents fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and

1 | that they were falsely representing to Plaintiffs that the character and amount of money

2 | Plaintiffs still owed on their debt.[8]

3 |     73.    As a result of Wells Fargo's violations of the FDCPA, Plaintiffs are entitled

4 | to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount

5 | up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and

6 | costs pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each and every

7 | Defendant herein.

8 |     74.    Plaintiffs relied on Wells Fargo's and its agents' misrepresentations and

9 | have been damaged in the following ways: (1) multiple parties may seek to enforce their

10 | debt obligation against them; (2) the title to their Property has been clouded and its

11 | salability has been rendered unmarketable, as any buyer of Plaintiffs' Property will find

12 | themselves in legal limbo, unable to know whether they can safely buy Plaintiffs'

13 | Property or get title insurance; (3) they have been paying the wrong party for an

14 | undetermined amount of time and overpaid in interest that was overcalculated; (4) they

15 | are unable to determine whether they sent their monthly mortgage payments to the right

16 | party; (5) their credit and credit score have been damaged; (6) their Property was

17 | foreclosed; and (7) they have expended significant funds to cover the cost of attorneys'

18 | fees and related costs.

19 | **FIFTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605 (RESPA)**

20 | **[As Against JPMorgan and Doe Defendants]**

21 |     75.    Plaintiffs hereby incorporate by reference each and every one of the

22 | preceding paragraphs as if the same were fully set forth herein.

23 |

24 | 
25 | [8] "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit
26 | until the plaintiff can gather what information he needs." *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 905 (2009) citing *Santa Maria*, 202 F.3d at 1178; see also *Stoll v. Runyon*, 165 F.3d
27 | 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond
28 | the Plaintiffs' control made it impossible to file a claim on time.") (citation omitted).

76.     Plaintiffs' Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, Regulation X.

77.     On or about September 7, 2011, Plaintiffs sent a Qualified Written Request ("QWR") to JPMorgan, via U.S. Post Certified Mail.  *See* **Exhibit "C."**

78.     The QWR contained information to enable JPMorgan to identify Plaintiffs' Loan and also contained requests for information of the Loan and provided the basis for Plaintiffs' belief that the account was in error.

79.     JPMorgan promised to provide documents related to Plaintiffs' loan, but has yet to further respond at all.  *See* **Exhibit "D."**

80.     Because the Loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

81.     Defendants violated Section 6 of Regulation X upon receipt of Plaintiffs' QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; and (b) failure to protect Plaintiffs' credit rating upon receipt of Plaintiffs' QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

82.     JPMorgan violated 12 U.S.C. § 2605 and is subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damages. *See* 12 U.S.C.   § 2605.

83.     The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' Loan, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial.

84.     As a direct and proximate result of the violations of RESPA, Dodd-Frank Act, and Regulation X by JPMorgan, Plaintiffs have suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

85.     As a result of JPMorgan's violations of 12 U.S.C. § 2605, RESPA, the Dodd-Frank Act, and Regulation X, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' Property will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' Property or get title insurance; (3) they have been paying the wrong party for an undetermined amount of time and overpaid in interest that was overcalculated; (4) they are unable to determine whether they sent their monthly mortgage payments to the right party; (5) their credit and credit score have been damaged; (6) their Property was foreclosed; and (7) they have expended significant funds to cover the cost of attorneys' fees and related costs.

## SIXTH CAUSE OF ACTION –
## VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ.
### [Against Wells Fargo, JPMorgan, and Doe Defendants]

86.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

87.     Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

88.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Bus. and Prof. Code section 17200, et seq.

89.     Cal. Bus. and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

90.    Defendant Wells Fargo, acting as the trustee of the Bear Stearns Trust, has violated 15 U.S.C. § 1692e by attempting to collect Plaintiffs' debt obligation under false, deceptive, and misleading representation.

91.    Defendants JPMorgan violated 12 U.S.C. § 2605 by failing to provide a complete response within 30 days of receipt, as required by section 1463(c) of the Dodd-Frank Act.

92.    Defendants Wells Fargo and/or JPMorgan violated Cal. Penal Code section 532(f)(a)(4) by filing or causing the Assignment to be filed with the recorder of the Los Angeles county in connection with Plaintiffs' mortgage loan transaction with knowledge that the Assignment contained a deliberate misstatement and misrepresentation that Wells Fargo had been assigned Plaintiffs' Note and Mortgage.

93.    Defendants Wells Fargo and/or JPMorgan engaged in unfair, unlawful,[9] and fraudulent business practices with respect to mortgage loan servicing and related matters.

94.    Defendants Wells Fargo and JPMorgan demanded and accepted payments for debts that were non-existent.

95.    Defendants Wells Fargo and/or JPMorgan reported payments as late to credit bureaus without the legal right or authority to do so.

96.    Defendants Wells Fargo acted as a beneficiary without the legal authority to do so.

97.    Defendants Wells Fargo and JPMorgan facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and Mortgage and engaged in other illegal debt collection activities.

---

[9] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal. 4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

98.    JPMorgan, acting as Plaintiffs' mortgage servicer, has been acting in a manner to mislead Plaintiffs into believing that Wells Fargo and/or JPMorgan had the authority to demand payments from them.

99.    As alleged herein, Plaintiffs' Note was not properly transferred to Wells Fargo, who seek to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

100.   On information and belief, Wells Fargo does not have a perfected security interest in Plaintiffs' Note such that they can enforce Plaintiffs' obligation or collect mortgage payments.

101.   Plaintiffs allege, on information and belief, Wells Fargo fraudulently enforced a debt obligation in which it had no pecuniary, equitable, or legal interest. Wells Fargo's conduct is part of a fraudulent debt collection scheme.

102.   The conduct described above by Wells Fargo and JPMorgan was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

103.   On information and belief, at all times material, Wells Fargo and/or JPMorgan had, and have, actual knowledge that Plaintiffs' account was not accurate, but that Plaintiffs would continue to make further payments based on Defendants' inaccurate account.  Plaintiffs made payments based on these improper, inaccurate, and fraudulent representations.

104.   As more fully described above, Defendants Wells Fargo's and JPMorgan's acts and practices are unlawful.  This conduct is ongoing and continues to this date.

105.   As more fully described above, Defendants Wells Fargo's and JPMorgan's acts and practices are likely to deceive members of the public.  This conduct is ongoing and continues to this date.

106. As more fully described above, Defendants Wells Fargo's and JPMorgan's acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have. This conduct is ongoing and continues to this date.

107. Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, Defendants violated several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

108. Plaintiffs allege that Defendants Wells Fargo's and JPMorgan's misconduct, as alleged herein, gave them an unfair competitive advantage over their competitors. The scheme implemented by Defendants Wells Fargo and JPMorgan is designed to defraud California consumers and enrich the Wells Fargo and JPMorgan.

109. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

110. By reason of the foregoing, Wells Fargo and JPMorgan have been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiffs and other California consumers who have been harmed and enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

111. As a direct and proximate result of the actions of Wells Fargo and JPMorgan, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Property, and Wells Fargo and JPMorgan have failed to remove this cloud from Plaintiffs' title.

112. Plaintiffs requests the Court to issue an order compelling Wells Fargo and JPMorgan, and any other Defendants claiming an interest in the Property, to take any and all actions necessary to remove the cloud they have placed upon their title, and an order enjoining such Defendants from taking such actions again in the future.

113. As a direct and proximate result of the violations of Cal. Bus. and Prof. Code section 17200 by Wells Fargo and JPMorgan, Plaintiffs have suffered actual

1   pecuniary damages and are entitled to relief including, but not limited to, civil liability,

2   restitution, injunctive relief preventing Wells Fargo and/or JPMorgan from continuing to

3   collect mortgage payments, and attorneys' fees, in an amount to be proven at trial.

4        114.   As a result of Wells Fargo's and/or JPMorgan's violations of Cal. Bus. and

5   Prof. Code section 17200, Plaintiffs have been damaged in the following ways: (1)

6   multiple parties may seek to enforce their debt obligation against them; (2) the title to

7   their Property has been clouded and its salability has been rendered unmarketable, as

8   any buyer of Plaintiffs' Property will find themselves in legal limbo, unable to know

9   whether they can safely buy Plaintiffs' Property or get title insurance; (3) they have been

10  paying the wrong party for an undetermined amount of time and overpaid in interest that

11  was overcalculated; (4) they are unable to determine whether they sent their monthly

12  mortgage payments to the right party; (5) their credit and credit score have been

13  damaged; (6) their Property was foreclosed; and (7) they have expended significant

14  funds to cover the cost of attorneys' fees and related costs.

15                  **SEVENTH CAUSE OF ACTION - ACCOUNTING**

16              **[Against Wells Fargo, JPMorgan, and Doe Defendants]**

17       115.   Plaintiffs hereby incorporate by reference each and every one of the

18  preceding paragraphs as if the same were fully set forth herein.

19       116.   Wells Fargo and JPMorgan have held themselves out to be Plaintiffs'

20  creditor and mortgage servicer.  As a result of this purported relationship with Plaintiffs,

21  said Defendants have a fiduciary duty to Plaintiffs to properly account for payments

22  made by Plaintiffs. [10]

23       117.   As a result of the aforementioned fraudulent conduct, Plaintiffs paid Wells

24  Fargo and JPMorgan their mortgage payments for a period of approximately five years.

25  

26      [10] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary
relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is

27  impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233.  The elements for a claim
for accounting are:  (1) fiduciary relationship or other circumstances appropriate to the remedy; and (2)

28  a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. *See*
Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

1   However, for the reasons stated herein, none of this money was actually owed to Wells

2   Fargo or JPMorgan.  For that reason, these monies are due to be either credited back to

3   Plaintiffs in full or credited to the rightful owner of Plaintiffs' Note and Mortgage.

4       118.   The amount of the money due from Defendants to Plaintiffs is unknown to

5   Plaintiffs and cannot be ascertained without an accounting of the receipts and

6   disbursements of the aforementioned transactions.

7          **EIGHTH CAUSE OF ACTION - BREACH OF CONTRACT**

8         **[Against Wells Fargo, JPMorgan, and Doe Defendants]**

9       119.   Plaintiffs hereby incorporate by reference each and every one of the

10  preceding paragraphs as if the same were fully set forth herein.

11      120.   In the alternative, if the Court finds that Wells Fargo is a successor in

12  interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiffs allege

13  that Defendants Wells Fargo and JPMorgan breached the Deed of Trust by improperly

14  crediting and debiting their account.

15      121.   On August 30, 2006, Plaintiffs obtained the subject mortgage loan from

16  Southstar and executed a Note and Deed of Trust.

17      122.   Wells Fargo allegedly became a party to this contract when it was

18  purportedly assigned MERS' interest in Plaintiffs' Note and Deed of Trust.

19      123.   The Deed of Trust sets forth the dates that the monthly principal and

20  interest payments were due and when late fees and other charges could be assessed.

21      124.   Section 2 of the Deed of Trust states that: "Except as otherwise described in

22  this Section 2, all payments accepted and applied by Lender shall be applied in the

23  following order of priority: (a) interest due under the Note; (b) principal due under the

24  Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic

25  Payment in the order in which it became due."  *See* **Exhibit "E,"** attached hereto is a

26  true and correct copy of the Deed of Trust.

27      125.   Plaintiffs substantially performed all of their conditions in the Deed of

28  Trust.

126.   Defendant Wells Fargo breached the Deed of Trust by failing to apply the payments made by Plaintiffs in the order of priority set forth in Section 2, and this resulted in improper fees and taxes being added to the balance of the Loan.

127.   Plaintiffs were unaware that Defendants were failing to apply the payments in the way set forth in the Deed of Trust because Defendants fraudulently concealed this practice of applying Plaintiffs' mortgage payments to Plaintiffs' account.  Plaintiffs could not have reasonably discovered the impropriety of Defendants behavior because these facts were hidden from them and were not disclosed throughout the servicing of their Loan.

128.   Plaintiffs could not have reasonably known of the existence of a breach of the Deed of Trust because Defendants fraudulently concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiffs' account that did not comply with Section 2 of Plaintiffs' Deed of Trust.

129.   As a proximate result of Defendants' breaches, Plaintiffs have suffered compensatory damages in an amount to be proven at trial.  Plaintiffs relied on Wells Fargo's and/or JPMorgan's misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' Property will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' Property or get title insurance; (3) they have been paying the wrong party for an undetermined amount of time and overpaid in interest that was overcalculated; (4) they are unable to determine whether they sent their monthly mortgage payments to the right party; (5) their credit and credit score have been damaged; (6) their Property was foreclosed; and (7) they have expended significant funds to cover the cost of attorneys' fees and related costs.

//

//

//

## NINTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### [Against Wells Fargo, JPMorgan, and Doe Defendants]

130.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

131.   In the alternative, if the Court finds that Wells Fargo is a successor in interest to the Deed of Trust pursuant to the terms of the Deed of Trust, Plaintiffs allege that Defendants Wells Fargo breached the implied promise of good faith and fair dealing by making it impossible for Plaintiffs to carry out their obligations under the contract because of the improperly applied payments and addition of interest and improper fees to their account.

132.   In every contract or agreement there is an implied promise of good faith and fair dealing.  Each party agrees to refrain from any action that would render performance of the contract impossible, and to do everything that the contract presupposes that each party will do to accomplish its purpose.[11]  The implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.[12]

133.   As alleged above, Plaintiffs entered into a contract (Deed of Trust) with Southstar and substantially performed the conditions under the Deed of Trust.

134.   Wells Fargo allegedly became a party to this contract when it was purportedly assigned MERS' interest in Plaintiffs' Note and Deed of Trust.

---

[11] *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983); *Harm v. Frasher,* 181 Cal. App. 2d 405, 417 (1960).

[12] "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658  (1958) (internal citation omitted). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.  The covenant thus cannot " 'be endowed with an existence independent of its contractual underpinnings.' " " It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-350 (2000) (citations omitted).

135.   Defendants enjoyed substantial discretionary power affecting the Plaintiffs' rights under the Deed of Trust as detailed throughout this Complaint. Defendants are required to exercise such power in good faith.

136.   Defendants breached their duty of good faith by interfering with Plaintiffs' ability to perform their obligations under the contract because Defendants improperly applied mortgage payments, incorrectly calculated interest, and improperly added fees to Plaintiffs' account, making it impossible for Plaintiffs to ever fulfill their obligations. Defendants' failure to cooperate allowed them to collect more money from Plaintiffs than they were owed.[13]

137.   Plaintiffs could not have reasonably known of the existence of a breach of the implied covenant of good faith and fair dealing claim because Defendants fraudulently concealed the fact that they were not applying payments in accordance with the Deed of Trust thereby interfering with the Plaintiffs' ability to perform under the contract. Defendants concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiffs' account and continued to render Plaintiffs' performance of the contract impossible.

138.   As a proximate result of Defendants' breaches, Plaintiffs have suffered general and special damages in an amount to be proven at trial.

139.   Plaintiffs relied on Wells Fargo's and/or JPMorgan's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' Property will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' Property or get title insurance; (3) they have been paying the wrong party for an undetermined amount of time and overpaid in interest that was overcalculated; (4) they

---

[13] Witkin, Summary of California Law, Contracts, §744 (8th ed.); *see also Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314 (1997); *Harm v. Frasher*, 181 Cal. App. 2d 405, 415 (1960).

1   are unable to determine whether they sent their monthly mortgage payments to the right

2   party; (5) their credit and credit score have been damaged; (6) their Property was

3   foreclosed; and (7) they have expended significant funds to cover the cost of attorneys'

4   fees and related costs.

## TENTH CAUSE OF ACTION – WRONGFUL FORECLOSURE

## AND TO SET ASIDE TRUSTEE'S SALE

### [Against All Defendants and Doe Defendants]

8   140.   Plaintiffs hereby incorporate by reference each and every one of the

9   preceding paragraphs as if the same were fully set forth herein.

10   141.   Upon information and belief, neither Wells Fargo and/or National were the

11   purported foreclosing beneficiary upon the Property.

12   142.   Despite this fact, Defendants proceeded to foreclose on Plaintiff's Property

13   on February 22, 2011.

14   143.   As set forth above, since Wells Fargo's status as beneficiary is void *ab*

15   *initio*, Wells Fargo and/or National did not have the authority to exercise the power of

16   sale within the Deed and National could not initiate foreclosure based upon defaults

17   known to Wells Fargo and/or National.  Therefore, the entire foreclosure is void *ab*

18   *initio*.

19   144.   Currently, Plaintiffs are at risk of losing their rights in that property due to

20   the actions of Wells Fargo, National, and one or more of the Doe Defendants and each

21   of them.

22   145.   Foreclosure was initiated by Defendant Wells Fargo and National, without

23   privilege and with malice, as the Defendants knew that they were not the true creditor

24   and thus a "default" could never have occurred.

25   146.   As stated, JPMorgan and Wells Fargo were not owed any money, National

26   was not the duly substituted trustee, and Wells Fargo had no pecuniary interest in the

27   loan and was not a beneficiary of the Note and Mortgage.  Therefore, despite the fact

28

1    that said Defendants knew that they were not the true creditor and thus no "default" had

2    occurred, they proceeded with the foreclosure sale.

3         147.   Defendants falsely represented to Mr. and Mrs. Bos that if they did not pay

4    Defendants, Plaintiffs' Property would be sold at a public auction.  Such actions are

5    malicious and fraudulent.  In fact, the foreclosure sale that did take place is *void* for the

6    reasons stated herein.

7         148.   Plaintiffs allege said Notice of Sale was false, void, and without privilege

8    for the reasons stated and discussed herein.

9         149.   Upon information and belief, Mr. and Mrs. Bos allege the Note and

10   Mortgage, as the same described above, was improperly pledged or sold to another party

11   and such sale was not done in accordance with Article 3 or Article 9 of the California

12   Commercial Code and was therefore improper and failed to confer any legally

13   cognizable rights in any party claiming to be a pecuniary beneficiary of Plaintiffs' Note

14   and Mortgage.

15        150.   No true sale of the Note and Mortgage, as required per securitization

16   documents, ever actually took place between any of the intermediaries in the

17   securitization chain.  Thus, Mr. and Mrs. Bos are open to double or triple financial

18   jeopardy from unknown claimants.

19        151.   At no point in time did the purported original beneficiary of the Deed of

20   Trust assign its interest in the property to any purported holder in due course of the Note

21   or Mortgage.

22        152.   If Wells Fargo had no interest that was assigned to them, they could not

23   proceed with a foreclosure.

24        153.   On information and belief, at the time Defendants Wells Fargo commenced

25   the foreclosure proceedings, they had no legal or equitable interest in the Note and

26   Mortgage and thus no amount was owed from Mr. and Mrs. Bos to JPMorgan and Wells

27   Fargo or the beneficiary of the Promissory Note and Deed of Trust.

28

154.   In addition to JPMorgan, Wells Fargo and/or one or more of the Doe Defendants never having the legal authority to foreclose, the foreclosure is *void* and cancelled as set forth above due to Wells Fargo and/or one or more of the Doe Defendants never being a true creditor with a perfected lien in the property.

155.   A void foreclosure is void against all parties, including bona fide purchasers for value.

156.   The estate of interest claimed in the Property by Defendants, and each of them, under the Trustee's Deed Upon Sale is a cloud on Plaintiffs' title to the Property in that it restricts Plaintiffs' right to the use and enjoyment of the Property and hinders Plaintiffs' right to unrestricted alienation of the Property.  If the Trustee's Deed Upon Sale is not delivered and cancelled, serious injury will result to Plaintiffs.

157.   As a proximate result of Defendants' negligent or reckless conduct, Plaintiffs' credit has been impaired and they have lost their Property to a wrongful foreclosure sale on February 22, 2011.

158.   Accordingly, Plaintiffs hereby request from this Court an order holding the Trustee's Sale be set-aside in that it was legally void and conducted without any right or privilege by JPMorgan, National, Wells Fargo, and one or more of the Doe Defendants.

159.   Plaintiffs further allege that any amount allegedly owing under the Deed is offset by the damages owed to them from Defendants JPMorgan and Wells Fargo.

## ELEVENTH CAUSE OF ACTION – TO VOID OR
## CANCEL TRUSTEE'S DEED UPON SALE
### [Against All Defendants and Doe Defendants]

160.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

161.   Wells Fargo and one or more of the Doe Defendants, as the purported foreclosing beneficiary, did not have the right to exercise the power of sale because Wells Fargo and one or more of the Doe Defendants' interest as beneficiary is void *ab*

1    *initio* as set forth above.  Therefore, the Trustee's Deed Upon Sale is void *ab initio* since

2    it is the result of Wells Fargo's void acts of exercising the power of sale.

3           162.   National was not the trustee since its status as trustee is void *ab initio* as set

4    forth above.  Therefore, National did not have the legal authority to conduct a trustee's

5    sale upon the Property and the Trustee's Sale is void *ab initio* as well as the trustee's

6    deed which was recorded as a result of such sale.

7           163.   A void foreclosure is void against all parties, including bona fide

8    purchasers for value.

9           164.   Plaintiffs detrimentally relied upon National and one or more of the Doe

10   defendants, as agent for Wells Fargo, who had no authority to declare a default and they

11   had no authority to foreclose on Plaintiffs' property.  JPMorgan, Wells Fargo, National

12   and one or more of the Doe defendants foreclosed, resulting in Plaintiffs' damage as set

13   forth above.  Therefore the foreclosure sale is void *ab initio* and, as such, Plaintiffs are

14   entitled to an order that the Trustee's Deed Upon Sale is void *ab initio* and cancelling

15   such Trustee's Deed.

16          WHEREFORE, Plaintiffs prays as follows:

17          1.     For compensatory, special, and general damages in an amount according to

18   proof at trial, but not less than $5,000,000.00 against all Defendants;

19          2.     For punitive and exemplary damages in an amount to be determined by the

20   Court against all Defendants;

21          3.     For an order compelling Defendants to remove any instrument, including

22   the Assignment, Substitution of Trustee, and Trustee's Deed Upon Sale, which does or

23   could be construed as constituting a cloud upon Plaintiffs' title to the Property;

24          4.     For a declaratory judgment finding that Defendants do not have any legally

25   cognizable rights as to Plaintiffs, the Property, Plaintiffs' Promissory Note, Plaintiffs'

26   Deed of Trust, or any other matter based on contract or any of the documents prepared

27   by Defendants, tendered to and executed by Plaintiffs;

28

1    5.    For the Court to issue an order restraining Defendants, their agents, or

2  employees from continuing or initiating any action against the Property and enjoining

3  Defendants, their agents, or employees from doing so during the pendency of this

4  matter;

5    6.    For an order compelling Defendants to disgorge all amounts wrongfully

6  taken from Plaintiffs and returning the same to Plaintiffs' interest thereon at the

7  statutory rate from the date the funds were first received from Plaintiffs;

8    7.    For costs of suit incurred herein;

9    8.    For reasonable attorneys' fees incurred; and

10    9.    For such other and further relief as the Court may deem proper.

11

12  Dated:        December 16, 2011              PROSPER LAW GROUP, LLP

13

14                                     By:  _Michael Thom_____

15                                          Gordon F. Dickson
                                            Deborah P. Gutierrez
16                                          Michael E. Thompson
                                            Attorneys for Plaintiffs,
17                                          Peter Bos and Julie Bos

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiffs Peter Bos and Julie Bos hereby demand a trial by jury on all claims.

3

4 Dated:      December 16, 2011          PROSPER LAW GROUP, LLP

5

6

7                                 By:

8                                   Gordon F. Dickson

                                  Deborah P. Gutierrez

9                                   Michael E. Thompson

                                  Attorneys for Plaintiffs,

10                                   Peter Bos and Julie Bos

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## Securitization Structure



THE CORRECT PROCESS OF SECURITIZATION

**PARTY A**
ORIGINATOR/LENDER

SECURITY NATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

**PARTY B**
SPONSOR/SELLER

LEHMAN BROTHERS HOLDINGS INC.

**TRUE SALE**
1) LEGAL OPINIONS
2) ASSET PURCHASE / SALE AGREEMENTS
3) DELIVERY & ACCEPTANCE RECEIPTS
4) COMPENSATION / MONEY
5) CAPACITY OF PARTIES TO BUY AND SELL

**PARTY D**
ISSUING ENTITY

LEHMAN XS TRUST 2007-10H, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-10H

**PARTY C**
DEPOSITOR

STRUCTURED ASSET SECURITIES CORPORATION

HOW LENDERS "SIDE-STEPPED" THE PROCESS

**PARTY A**
ORIGINATOR/LENDER

SECURITY NATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

**PARTY B**
SPONSOR/SELLER

LEHMAN BROTHERS HOLDINGS INC.

**TRUE SALE**
1) LEGAL OPINIONS
2) ASSET PURCHASE / SALE AGREEMENTS
3) DELIVERY & ACCEPTANCE RECEIPTS
4) COMPENSATION / MONEY
5) CAPACITY OF PARTIES TO BUY AND SELL

**PARTY D**
ISSUING ENTITY

LEHMAN XS TRUST 2007-10H, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-10H

**PARTY C**
DEPOSITOR

STRUCTURED ASSET SECURITIES CORPORATION

# EXHIBIT B

**Section 2.01.**        **Conveyance of Mortgage Loans to Trustee.**

(A) The Depositor, concurrently with the execution and delivery of this Agreement, sells, transfers and assigns to the Trust without recourse all its right, title and interest in and to

      (I) the Mortgage Loans identified in the Mortgage Loan Schedule, including all interest due and principal received with respect to the Mortgage Loans after the Cut-off Date;

      (II) such assets as shall from time to time be credited  or are  required by the terms of this Agreement to be credited to the Custodial Account,

      (III) such assets relating to the Mortgage Loans as from time to time  may be held by the Trustee in the  Distribution  Account  and the Reserve  Fund for the  benefit of the Offered Certificates(other than the Class I-X Certificates and the Grantor Trust Certificates), the Underlying Certificates and the  related Class B-IO  Certificates, as applicable,

      (IV) such assets relating to the Group I Mortgage Loans as from time to time may be held by the Trustee in the Final Maturity Reserve Account and such assets relating to the mortgage Loans as from time to time may be held by the Trustee in the Adjustable Rate Supplemental Fund for the benefit of the Group I Certificates (other than the Class I-X Certificates) and the Group II Offered Certificates, as applicable,

      (V) any REO Property,

      (VI) the Required Insurance Policies and any amounts paid or payable by the insurer under any Insurance  Policy (to the extent the mortgagee has a claim thereto),

      (VII) the Mortgage Loan Purchase Agreement to the extent provided in Section  2.03(a),

      (VIII) such assets as shall from time to time be credited or are required by the terms of this Agreement to be credited to any of the  Distribution Account and the Reserve Fund and

      (IX) any proceeds of the  foregoing.  Although it is the intent of the parties to this Agreement that the conveyance of the Depositor's right, title and interest in and to the Mortgage Loans and other assets in the Trust Fund pursuant to this Agreement  shall constitute a purchase and sale and not a loan, in the event that such  conveyance is deemed to be a loan, it is the intent of the parties to this  Agreement that the Depositor shall be deemed to have granted to the  Trustee a first priority perfected security interest in all of the Depositor's  right, title and interest in, to and under the Mortgage Loans and other assets in the Trust Fund, and that this Agreement shall constitute a security agreement under applicable law.

(B) In connection with the above transfer and assignment, the Sponsor hereby deposits with the Trustee or the Custodian, as its agent, with respect to each Mortgage Loan:

      (I)  the original Mortgage Note, endorsed without recourse
            (a) to the order of the Trustee or in blank or
            (b) in the case of a Mortgage Loan registered on the MERS system, in blank, and in each case  showing an unbroken chain of endorsements from the originator thereof to the  Person endorsing it, or lost note affidavit together with a copy of the related Mortgage Note,

(II) the original Mortgage and, if the related Mortgage Loan is a MOM Loan, noting the presence of the MIN and language indicating that such Mortgage Loan is a MOM Loan, which shall have been recorded (or if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (w) in the proviso below applies, shall be in recordable form),

(III) unless the Mortgage Loan is a MOM Loan, a certified copy of the assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) in blank or to "Wells Fargo Bank, National Association, as Trustee", with evidence of recording with respect to each Mortgage Loan in the name of the Trustee thereon (or if clause (w) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland, Tennessee, South Carolina, Mississippi and Florida, or an Opinion of Counsel has been provided as set forth in this Section 2.01(b), shall be in recordable form),

(IV) all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon,

(V) the original or a copy of the policy or certificate of primary mortgage guaranty insurance, to the extent available, if any,

(VI) the original policy of title insurance or mortgagee's certificate of title insurance or commitment or binder for title insurance, if available, or a copy thereof, or, in the event that such original title insurance policy is unavailable, a photocopy thereof, or in lieu thereof, a current lien search on the related Mortgaged Property, and

(VII) originals of all modification agreements, if applicable and available. Provided, however, that in lieu of the foregoing, the Depositor may deliver the following documents, under the circumstances set forth below: (w) in lieu of the original Security Instrument, assignments to the Trustee or intervening assignments thereof which have been delivered, are being delivered or will, upon receipt of recording information relating to the Security Instrument required to be included thereon, be delivered to recording offices for recording and have not been returned to the Depositor in time to permit their delivery as specified above, the Depositor may deliver a true copy thereof with a certification by the Depositor, on the face of such copy, substantially as follows: "Certified to be a true and correct copy of the original, which has been transmitted for recording"; (x) in lieu of the Security Instrument, assignment to the Trustee or intervening assignments thereof, if the applicable jurisdiction retains the originals of such documents (as evidenced by a certification from the Depositor to such effect) the Depositor may deliver photocopies of such documents containing an original certification by the judicial or other governmental authority of the jurisdiction where such documents were recorded; and (y) the Depositor shall not be required to deliver intervening assignments or Mortgage Note endorsements between the Sponsor and the Depositor, and between the Depositor and the Trustee; and provided, further, however, that in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, in lieu of delivering the above documents, may deliver to the Trustee or the Custodian, as its agent, a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loans in the Custodial Account on the Closing Date the Depositor, in lieu of delivering the above documents, may deliver to the Trustee or the Custodian, as its agent, a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loans in the Custodial Account on the Closing Date. The Depositor shall deliver such original documents (including any original documents as to which certified copies had previously been delivered) to the Trustee or the Custodian, as its agent, promptly after they are received. The Depositor shall cause the Sponsor, at its expense, to cause each assignment of the Security Instrument to the Trustee to be recorded not later than 180 days after the Closing Date, unless (a) such recordation is not

required by the Rating Agencies or an Opinion of Counsel addressed to the Trustee has been provided to the Trustee (with a copy to the Custodian) which states that recordation of such Security Instrument is not required to protect the interests of the Certificateholders in the related Mortgage Loans or (b) MERS is identified on the Mortgage or on a properly recorded assignment of the Mortgage as the mortgagee of record solely as nominee for the Sponsor and its successor and assigns; provided, however, that each assignment shall be submitted for recording by the Sponsor in the manner described above, at no expense to the Trust or the Trustee or the Custodian, as its agent, upon the earliest to occur of: (i) reasonable direction by the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 25% of the Trust, (ii) the occurrence of an Event of Default, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Sponsor and (iv) the occurrence of a servicing transfer as described in Section 8.02. Notwithstanding the foregoing, if the Sponsor fails to pay the cost of recording the assignments, such expense will be paid by the Trustee and the Trustee shall be reimbursed for such expenses by the Trust in accordance with Section 9.05.

**Section 2.02.**      **Acceptance of Mortgage Loans by Trustee.**

     **(A)** The Trustee (on behalf of the Trust) acknowledges the sale, transfer and assignment of the Trust Fund to it by the Depositor and receipt of, subject to further review and the exceptions which may be noted pursuant to the procedures described below, and declares that it holds, the documents (or certified copies thereof) delivered to it or the Custodian, as its agent, pursuant to Section 2.01, and declares that it will continue to hold those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund delivered to it as Trustee in trust for the use and benefit of all present and future Holders of the Certificates. On the Closing Date, with respect to the Initial Mortgage Loans, the Custodian shall acknowledge with respect to each Mortgage Loan by deliver to the Depositor and the Trustee of an Initial Certification receipt of the Mortgage File, but without review of such Mortgage File, except to the extent necessary to confirm that such Mortgage File contains the related Mortgage Note or lost note affidavit. No later than 90 days after the Closing Date (or, with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or Custodian thereof), the Trustee agrees, for the benefit of the Certificateholders, to review or cause to be reviewed by the Custodian on its behalf (under the Custodial Agreement), each Mortgage File delivered to it and to execute and deliver, or cause to be executed and delivered, to the Depositor and the Trustee an Interim Certification. In conducting such review, the Trustee or Custodian will ascertain whether all required documents have been executed and received, and based on the Mortgage Loan Schedule, whether those documents relate, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans it has received, as identified in the Mortgage Loan Schedule. In performing any such review, the Trustee or the Custodian, as its agent, may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon. If the Trustee or the Custodian, as its agent, finds any document constituting part of the Mortgage File has not been executed or received, or to be unrelated, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified in Exhibit B, or to appear defective on its face (i.e. torn, mutilated, or otherwise physically altered) (a "Material Defect"), the Trustee or the Custodian, as its agent, shall promptly, upon completion of the review of all files, but in no event later than 90 days after the Closing Date, notify the Sponsor. In accordance with the Mortgage Loan Purchase Agreement, the Sponsor shall correct or cure any such defect within ninety (90) days from the date of notice from the Trustee or the Custodian, as its agent, of the defect and if the Sponsor fails to correct or cure the defect within such period, and such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee or the Custodian, as its agent, shall enforce the Sponsor's obligation pursuant to the Mortgage Loan Purchase Agreement, within 90 days from the Trustee's or the Custodian's notification, to purchase such Mortgage Loan at the Repurchase Price; provided that, if such defect would cause the Mortgage Loan to be other than a

"qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure or repurchase must occur within 90 days from the date such breach was discovered; provided, however, that if such defect relates solely to the inability of the Sponsor to deliver the original Security Instrument or intervening assignments thereof, or a certified copy because the originals of such documents, or a certified copy have not been returned by the applicable jurisdiction, the Sponsor shall not be required to purchase such Mortgage Loan if the Sponsor delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date. The foregoing repurchase obligation shall not apply in the event that the Sponsor cannot deliver such original or copy of any document submitted for recording to the appropriate recording office in the applicable jurisdiction because such document has not been returned by such office; provided that the Sponsor shall instead deliver a recording receipt of such recording office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Trustee or the Custodian, as its agent, shall be effected by the Sponsor within thirty days of its receipt of the original recorded document.

**(B)** No later than 180 days after the Closing Date (or with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or the Custodian thereof), the Trustee or the Custodian, as its agent, will review, for the benefit of the Certificateholders, the Mortgage Files delivered to it and will execute and deliver or cause to be executed and delivered to the Depositor and the Trustee a Final Certification. In conducting such review, the Trustee or the Custodian, as its agent, will ascertain whether an original of each document required to be recorded has been returned from the recording office with evidence of recording thereon or a certified copy has been obtained from the recording office. If the Trustee or the Custodian, as its agent, finds a Material Defect, the Trustee or the Custodian, as its agent, shall promptly notify the Sponsor (provided, however, that with respect to those documents described in Sections 2.01(b)(iv), (v) and (vii), the Trustee's and Custodian's obligations shall extend only to the documents actually delivered to the Trustee or the Custodian pursuant to such Sections). In accordance with the Mortgage Loan Purchase Agreement, the Sponsor shall correct or cure any such defect within 90 days from the date of notice from the Trustee or the Custodian, as its agent, of the Material Defect and if the Sponsor is unable to cure such defect within such period, and if such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee shall enforce the Sponsor's obligation under the Mortgage Loan Purchase Agreement to provide a Substitute Mortgage Loan (if within two years of the Closing Date) or purchase such Mortgage Loan at the Repurchase Price; provided, however, that if such defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure, repurchase or substitution must occur within 90 days from the date such breach was discovered; provided, further, that if such defect relates solely to the inability of the Sponsor to deliver the original Security Instrument or intervening assignments thereof, or a certified copy, because the originals of such documents or a certified copy, have not been returned by the applicable jurisdiction, the Sponsor shall not be required to purchase such Mortgage Loan, if the Sponsor delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date. The foregoing repurchase obligation shall not apply in the event that the Sponsor cannot deliver such original or copy of any document submitted for recording to the appropriate recording office in the applicable

jurisdiction because such document has not been returned by such office; provided that the Sponsor shall instead deliver a recording receipt of such recording office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Trustee or the Custodian, as its agent, shall be effected by the Sponsor within thirty days of its receipt of the original recorded document.

(C) In the event that a Mortgage Loan is purchased by the Sponsor in accordance with Sections 2.02(a) or (b) above, the Sponsor shall remit to the Servicer the Repurchase Price for deposit in the Custodial Account and the Sponsor shall provide to the Trustee written notification detailing the components of the Repurchase Price. Upon deposit of the Repurchase Price in the Custodial Account, the Depositor shall notify the Trustee and the Custodian, as agent of the Trustee (upon receipt of a Request for Release in the form of Exhibit D attached hereto with respect to such Mortgage Loan), shall release to the Sponsor the related Mortgage File and the Trustee shall execute and deliver all instruments of transfer or assignment, without recourse, representation or warranty, furnished to it by the Sponsor, as are necessary to vest in the Sponsor title to and rights under the Mortgage Loan. Such purchase shall be deemed to have occurred on the date on which the Repurchase Price in available funds is received by the Trustee. The Servicer shall amend the Mortgage Loan Schedule, which was previously delivered to it by the Depositor in a form agreed to between the Depositor and the Servicer, to reflect such repurchase and shall promptly notify the Trustee of such amendment and the Trustee shall promptly notify the Rating Agencies and the Servicer of such amendment. The obligation of the Sponsor to repurchase any Mortgage Loan as to which such a defect in a constituent document exists shall be the sole remedy respecting such defect available to the Certificateholders or to the Trustee on their behalf.

# EXHIBIT C



**PROSPER LAW CORPORATION**
5301 BEETHOVEN STREET
SUITE 109
LOS ANGELES, CALIFORNIA 90066

TELEPHONE: (800) 808-9798
FAX: (800) 808-0428
WEBSITE: www.prosperlawcorp.com

GORDON F. DICKSON
DEBORAH P. GUTIERREZ

—

OF COUNSEL:
RICHARD M. GEE ♦
KEITH R. OLIVER
CARLOS A. LLARENA
MICHAEL KIM

♦ MEMBER CA & CO BARS

DIRECTOR OF FIRM OPERATIONS:
ROBYN NAKAGAWA

SAN FRANCISCO OFFICE
—
450 HARRISON STREET, SUITE 310
SAN FRANCISCO, CALIFORNIA 94105

SAN DIEGO OFFICE
—
701 B STREET, SUITE 234
SAN DIEGO, CALIFORNIA 92101

SENDER'S E-MAIL:
gfdickson@prosperlawcorp.com
Telephone (310) 893-6207

September 7, 2011

<u>Via US Certified Mail #7010 2780 0000 8337 1362</u>

J.P. Morgan Chase Legal Department
CT Corporation System
1801 West Bay Drive NE, Ste 206
Olympia, WA 98502

Re:   **QUALIFIED WRITTEN REQUEST**
      **Loan Number:** 0015019680
      **Our Client:** Pete Bos
      **Property Address:** 933 W. Rainbow Falls, Orange, CA 92865

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

To Whom It May Concern:

      Please be advised this office has been retained by Pete Bos ("Mr. Bos") in regards to the accounting and servicing of this loan and the need for understanding and clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date. The subject property is located at 933 W. Rainbow Falls, Orange, CA 92865.

      This letter concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients may be legally obligated to.

      Please provide the following information:

1.   A true and present copy of the promissory note and deed of trust;

Page **2** of **4**

2.  A complete life of loan transactional history;

3.  The Transaction Codes for the software platform of the Servicer;

4.  The Code definitions in plain English;

5.  The Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of all of the accounts in an XL spreadsheet format;

6.  The MERS Milestone Reports and the Edgar website address for the Pooling and Servicing Agreement, Prospectus and Prospectus Supplement;

7.  The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note;

8.  Copies of all collection notes and communications files;

9.  An itemized statement of the amount needed to fully reinstate the loan;

10. All communications with any non-lawyer third-party providers; and

11. All Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan.

Under RESPA, this information must be provided and cannot be claimed as "confidential," "proprietary," or otherwise private.  Failure to disclose the requested information will be considered failure to comply with this Qualified Written Request and thus a violation of 15 U.S.C. section 1601.

I also hereby demand that a chain of transfer from J.P. Morgan Chase to wherever the security currently is be promptly sent to my office.  Absent the actual evidence of the security, Mr. Bos has no choice but to dispute the validity of J.P. Morgan Chase's lawful ownership, funding, entitlement right, and the current debt J.P. Morgan Chase claims Mr. Bos owes.  By debt I am referring to the principal balance J.P. Morgan Chase claims Mr. Bos owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by J.P. Morgan Chase or any trust or entity J.P. Morgan Chase may service or sub-service for.

To independently validate this debt, my office needs to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.  Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until responses are provided to each of the requests.

I also request that J.P. Morgan Chase conduct J.P. Morgan Chase's own investigation and audit of this account since its inception to validate the debt J.P. Morgan Chase currently claims Mr. Bos owes. I would like J.P. Morgan Chase to validate the debt so that it is accurate.

Please be aware that potential abuses by J.P. Morgan Chase or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

• Increased the amounts of monthly payments;

- Increased the principal balance Mr. Bos owes;
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or;
- Assessed, charged and/or collected fees, expenses and miscellaneous charges Mr. Bos is not legally obligated to pay under this mortgage, note and/or deed of trust.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601.  RESPA provides substantial penalties and fines for non-compliance or failure to answer the questions provided in this letter within sixty (60) days of its receipt.

Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

**Default Provisions under this QUALIFIED WRITTEN REQUEST**

J.P. Morgan Chase or any agents, transfers, or assigns' omissions of, or agreement by silence to this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to, including but not limited by, any violations of law and/or immediate termination and/or removal of any and all right, title and interest (liens) in Mr. Bos's, or any property or collateral, connected to Mr. Bos's or loan number 0015019680, and waives any and all immunities and/or defenses to claims and/or violations agreed to in this RESPA REQUEST, including but not limited to:

1. Mr. Bos's right to, by J.P. Morgan Chase's breach of fiduciary responsibility, fraud, and/or misrepresentation, revoke and rescind any and all power of attorney or appointment J.P. Morgan Chase may have or may have had in connection with loan number 0015019680, and any property and/or real estate connected with loan number 0015019680;

2. Mr. Bos's right to have any certificated or uncertificated security re-registered in Mr. Bos's, and only Mr. Bos's name;

3. Mr. Bos's right of collection via J.P. Morgan Chase's liability insurance and/or bond;

4. Mr. Bos's entitlement in filing and executing any instruments, as power of attorney for and by J.P. Morgan Chase ,including but not limited to a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where J.P. Morgan Chase is located;

5. J.P. Morgan Chase's right to damages because of J.P. Morgan Chase's wrongful registration and breach of intermediary responsibility with regard to Mr. Bos's asset, by way of J.P. Morgan Chase issuing to Mr. Bos a certified check for the original value of Mr. Bos's monetary instrument;

Los Angeles          San Francisco          San Diego

6.       Mr. Bos's right to have loan number 0015019680 completely set off because of J.P. Morgan Chase's wrongful registration and breach of intermediary responsibility with regard to Mr. Bos's monetary instrument/asset by J.P. Morgan Chase's sending confirmation of set off of wrongful liability of Mr. Bos and issuing a certified check for the difference between the original value of Mr. Bos's monetary instrument/asset and what Mr. Bos mistakenly sent to J.P. Morgan Chase as a payment for such wrongful liability.

        J.P. Morgan Chase or any of J.P. Morgan Chase's transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws – signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury, while offering direct testimony with the official capacity as appointed agent for J.P. Morgan Chase in accordance with J.P. Morgan Chase's Articles of Incorporation, by-laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association.

        Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days.  When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as J.P. Morgan Chase's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

        Power of Attorney: When J.P. Morgan Chase fails by not rebutting to any part of this RESPA REQUEST, J.P. Morgan Chase agrees with the granting unto Mr. Bos unlimited Power of Attorney and any and all full authorization in signing and endorsing J.P. Morgan Chase's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement.  Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement.  Consent and agreement with this Power of Attorney by J.P. Morgan Chase waives any and all claims and/or defenses of J.P. Morgan Chase, and remains in effect until the satisfaction of all obligations by J.P. Morgan Chase have been satisfied.

If you have any questions, please do not hesitate to contact my office.

Sincerely,

Gordon F. Dickson, Esq.
*Managing Attorney*

Los Angeles          San Francisco          San Diego

# EXHIBIT D

**AS** ALVARADOSMITH

RECEIVED OCT 1 1 2011

A PROFESSIONAL CORPORATION
INCLUDING PROFESSIONAL CORPORATIONS

1 MacArthur Place
Suite 200
Santa Ana, California 92707
Phone: 714.852.6800
Fax: 714.852.6899
www.AlvaradoSmith.com

Lauren M. Takos
(714) 852-6800
ltakos@AlvaradoSmith.com

Los Angeles
213.229.2400

San Francisco
415.624.8665

October 6, 2011

**VIA OVERNITE EXPRESS**

Gordon F. Dickson
Prosper Law Corporation
5301 Beethoven Street, Suite 109
Los Angeles, California 90066

Re:    Loan Number XXXXX19680
       933 W. Rainbow Falls, Orange, CA 92865
       Our File No.: AL109.E206

Dear Mr. Dickson:

Our office has been retained to represent JPMorgan Chase Bank, N.A., as successor servicer to EMC Mortgage LLC, formerly known as EMC Mortgage Corporation ("JPMorgan"), with respect to the property/loan set forth above.  We are in receipt of and hereby acknowledge receipt of your letter dated September 7, 2011, which purports to be a "Qualified Written Request" under the Real Estate Settlement Procedures Act ("RESPA"), 12 USC § 2605(e).

According to Section 2605(e)(1)(b)(ii), the debtor should include a statement of reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower.

Your request does not comply with Section 2605(e)(1)(b)(ii) as the letter does not explain how the account is in error or include a statement and supporting documentation of his reasons for believing that the account is in error.  Rather, the letter includes a list of document demands which appear to be entirely irrelevant to a valid QWR under RESPA.  *See Hawkins v. Homecomings Financial, LLC*, 2010 WL 546372, at *3 (C.D.Cal. 2010); *Gates v Wachovia Mortg., FSB*, 2010 WL 2606511, at *3 (E.D.Cal. 2010). Accordingly, without a written explanation as to why you believe the Bos' account is in error, we are unable to respond to the request and your demands as stated above are denied.

1231214.2



Gordon F. Dickson
October 6, 2011
Page 2

     As a courtesy, we will compile and provide documents which relate to the subject loan. These documents will be sent under separate cover once compiled. Please provide us with a reason why you believe the accounting is in error, and our client will provide a further response. Alternatively, if there are any specific documents or information you need, please let our office know.

                                           Sincerely,

                                           ALVARADOSMITH
                                           A Professional Corporation

                                           Lauren M. Takos

LMT:

# EXHIBIT E

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

〜 **42.00**

**2006000745471** 01:59pm 11/03/06

108 73 D11 13

0.00 0.00 0.00 0.00 36.00 0.00 0.00 0.00

~~Return To:~~

SOUTHSTAR FUNDING, LLC

400 NORTHRIDGE ROAD, SUITE 1000

ATLANTA, GA 30350

4310535 _____ [Space Above This Line For Recording Data] _____

LOAN NO. 2118107773

MIN: 1001908-2118107773-3   **DEED OF TRUST**

## DEFINITIONS

(A) "Security Instrument" means this document, which is dated   AUGUST 30, 2006
together with all riders to this document.
(B) "Borrower" is JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND,
AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is SOUTHSTAR FUNDING, LLC

Lender is, LLC                                      organized and existing under the laws of
DELAWARE                         . Lender's address is  400 NORTHRIDGE ROAD,
SUITE 1000, ATLANTA, GEORGIA 30350
Lender is the beneficiary under this Security Instrument.
(E) "Trustee" is KIRK K. SMITH,
(F) "Secured Indebtedness" means:
    (1) The debt, interest, finance charges, and other fees and charges incurred under the terms of the
    Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC") dated
    AUGUST 30, 2006        ; the HELOC matures on   NOVEMBER 30, 2031 .
    (2) Any advance made to Borrower or obligation incurred by Borrower pursuant to any contract or
    evidence of indebtedness benefitting Lender, regardless of whether such advance has been made
    or such obligation has been incurred in whole or in part as of the date of this Security Instrument.
    (3) Any sum paid and expense incurred by Lender under the terms of this Security Instrument.

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP(25910.CAM-07/05    46247.14122              . Page 1 of 10

1/04
CALOCRSMS

LOAN NO. 2118107773

(G) "Credit Limit" means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time. The Credit Limit is     58,000.00                          . Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, finance charges, and other fees and charges validly incurred by Borrower under this Security Instrument. The Credit Limit also does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

(H) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Condominium Rider | ☒ Planned Unit Development Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] |
| | LEGAL ATTACHED |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

TRANSFER OF RIGHTS IN THE PROPERTY

   The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Secured Indebtedness, and all renewals, extensions, and modifications of the Secured Indebtedness; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the HELOC.  For this purpose, Borrower hereby irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE                                                                                   :
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 933 W. RAINBOW FALLS WAY
                                              [Street]
ORANGE                                      , California    92865      ("Property Address"):
   [City]                                                  [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HF425917:CAM-07/05     46247.14122                    Page 2 of 10                                    1/04
                                                                                          CALOCRSMS

LOAN NO. 2118107773

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

ADVANCES

Any advances made under the HELOC may be made, repaid, and remade from time to time, subject to the limitations of the HELOC. Regardless of whether the Secured Indebtedness is reduced to a zero balance, this Security Instrument shall remain in effect until released or reconveyed.

Any advances made in excess of the Credit Limit shall not be secured by this Security Instrument if prohibited by Applicable Law or, if not prohibited by Applicable Law, unless (i) Lender agrees to increase the Credit Limit and complies with any subsequent disclosure, rescission, and other requirements under Applicable Law and (ii) Borrower agrees to execute any documents Lender requires to evidence and secure the increase in the Credit Limit. Lender shall not be obligated in any way under this Security Instrument to increase the Credit Limit or to make additional or future loans or advances in any amount.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Secured Indebtedness; Performance of Obligations. Borrower shall pay when due the Secured Indebtedness and shall perform all of Borrower's obligations under the HELOC and this Security Instrument.
2. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and the dues, fees, and assessments of a condominium association, homeowners association, or similar organization, if any.

Borrower shall make all payments and comply with all covenants as and when required by any mortgage, deed of trust, security agreement, or other lien document evidencing a lien that is prior to this Security Instrument and that is approved by Lender. Borrower shall not modify, extend, or increase the amount secured by such prior lien document without Lender's written consent.

Upon demand Borrower shall furnish to Lender satisfactory evidence of payment of such taxes, assessments, charges, fines, impositions, and prior liens.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
EP425918.CAM-07/05    46247.14122                    Page 3 of 10

1/04
CALOCRSMS

LOAN NO. 2118107773

3.  Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against fire, hazards included within the term "extended coverage," flood, and any other hazards including without limitation earthquakes, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the HELOC.  Borrower may obtain such insurance from the insurance carrier of Borrower's choice, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability, and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 3 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

4.  Preservation, Maintenance, and Protection of the Property; Occupancy and Use of the Property; and Inspection.  Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value, due to its condition, such as would adversely affect Lender's security in the Property.  Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP425919.CAM-07/05    46247.14122                    Page 4 of 10

1/04
CALOCRSMS

LOAN NO. 2118107773

for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower shall not be relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall not materially change the present occupancy and use of the Property without Lender's written consent. Borrower shall not use the Property in an illegal manner or for any illegal use such as would subject the Property to seizure.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

5. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees, to the extent not prohibited by Applicable Law, to protect its interest in the Property and/or rights under this Security Instrument, including Lender's secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5.

Any amounts disbursed by Lender under this Section 5 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If the Property is located in a condominium project or a planned unit development, Borrower shall perform all of Borrower's obligations under the covenants, by-laws, or regulations of the condominium project or planned unit development.

6. Condemnation. Borrower shall give Lender prompt notice of any condemnation or eminent domain proceeding or action pending or threatened against the Property and authorizes Lender to intervene in Borrower's name in any such proceeding or action. Borrower assigns to Lender any money awarded to Borrower pursuant to such proceeding or action, and such money shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

7. Loan Charges. If the HELOC is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the HELOC exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the HELOC or by making a direct payment to Borrower. If a refund reduces principal, the reduction shall be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the HELOC). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP425020.CAM-07/05    46247.14122          Page 5 of 10

1/04
CALOCRSMS

LOAN NO. 2118107773

8. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

9. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. In the event that any provision or clause of this Security Instrument or the HELOC conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the HELOC that can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

10. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the HELOC (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the HELOC without the co-signer's consent.

Subject to the provisions of Section 11, any successor to the interests of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

11. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 11, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO. 2118107773

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Indebtedness. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Indebtedness in full. If Borrower fails to pay the Secured Indebtedness in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12.  Hazardous Substances.  As used in this Section 12: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) that creates an Environmental Condition, or (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower promptly shall give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

13.  Escrow for Taxes and Insurance.  Unless otherwise provided in a separate agreement, Borrower shall not be required to pay in escrow to Lender funds for taxes, insurance, and other assessments.

14.  Default.  Borrower shall be in default under the HELOC and this Security Instrument if without limitation any of the following occur: (a) Borrower engaged or engages in fraud or material misrepresentation in connection with any aspect of the HELOC or this Security Instrument, including without limitation Borrower's application for the HELOC and Borrower's occupancy of the Property; (b) Borrower does not meet repayment terms under the HELOC; (c) Borrower's action or inaction adversely affects the collateral for the HELOC (including without limitation the Property) or Lender's rights in the collateral including without limitation: (i) Borrower's failure to maintain the insurance required under Section 3 of this Security Instrument; (ii) Borrower's transfer of the Property as provided in Section 11

CALIFORNIA HELOC Deed of Trust – MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP425922.CAM-07/05    46247.14122

Page 7 of 10

1/04
CALOCRSMS

LOAN NO. 2118107773

of this Security Instrument; (iii) Borrower's failure to maintain the Property or use of the Property in a destructive manner; (iv) Borrower's commission of waste of the Property; (v) Borrower's failure to pay taxes due on the Property or Borrower's failure to act such that a lien superior to Lender's lien is filed against the Property; (vi) the death of all Borrowers; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against Borrower that subjects the Property to action that adversely affects Lender's interest in the Property; (ix) the creation of a lien on the Property without Lender's permission; or (x) a superior lien holder forecloses on the Property such that Lender's interest in the Property is adversely affected.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

15. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 11 unless Applicable Law provides otherwise). The notice shall comply with Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of the Secured Indebtedness without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 15, including, without limitation reasonable attorneys' fees, to the extent not prohibited by Applicable Law, and costs of title evidence.

If Lender invokes the power of sale, Lender shall give or cause Trustee to give all notices required by Applicable Law in the time and manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property to the highest bidder at public auction at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying the Property without covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, without limitation reasonable Trustee's and attorneys' fees to the extent not prohibited by Applicable Law; (b) to the Secured Indebtedness; and (c) any excess to the person or persons legally entitled to it.

If Borrower is in default, Lender may elect not to accelerate the Secured Indebtedness but instead may refuse to make additional advances or reduce the Credit Limit. Even if Lender elects not to exercise any remedy under this Security Instrument, Lender does not forfeit or waive Lender's right to do so at a later time or to do so if Borrower is in default again.

16. Reconveyance. Upon payment in full of the Secured Indebtedness, Lender shall request Trustee to reconvey the Property and surrender this Security Instrument and all documents evidencing the Secured Indebtedness to Trustee. Lender shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee as permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

17. Substitute Trustee. Lender, at its option may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recording of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument is recorded, and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

CALIFORNIA HELOC Deed of Trust – MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP4Z59Z3.CAM-07/05    46247.14122

1/04
CALOCRSMS

LOAN NO. 2118107773

18. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

19. **Property Insurance.** The third paragraph of Section 3 is revised to read as follows; all other terms and provisions shall remain unchanged.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it. Borrower also acknowledges receipt of a copy of this Security Instrument.

| | | |
|---|---|---|
| _____ (Seal) | _____ (Seal) |
| JULIE BOS        Borrower | PETER A. BOS        Borrower |
| _____ (Seal) | _____ (Seal) |
| Borrower | Borrower |
| _____ (Seal) | _____ (Seal) |
| Borrower | Borrower |

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP425924.CAM-07/06    46247.14122                    Page 9 of 10                                    1/04
CALOCRSMS

LOAN NO. 2118107773

_____ [Space Below This Line For Acknowledgment]_____

STATE OF CALIFORNIA,
COUNTY OF Orange                    }

On 8-30-06                    before me, Cynthia P. Lanning, Notary Public
personally appeared JULIE BOS AND PETER A. BOS

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument and person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal



_____ (Seal)
Cynthia P. Lanning

CYNTHIA P. LANNING
COMM. #1572851
Notary Public - California
Orange County
My Comm. Expires Apr. 25, 2009

CALIFORNIA HELOC Deed of Trust - MERS
Residential Funding Corporation
(c) 2005 Middleberg, Riddle & Gianna
HP425923.CAM-07/05    46247.141.22                    Page 10 of 10                    1/04
                                                                                      CALOCRSMS

PB JB

# EXHIBIT "A"

PARCEL 1:

LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE STREETS SHOWN AS LOTS A AND B OF TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY.

BOS
10578098
FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST

When recorded mail to:
First American Title Insurance
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
Attn: NRP Team

PLANNED UNIT DEVELOPMENT RIDER

LOAN NO. 2118107773

THIS PLANNED UNIT DEVELOPMENT RIDER is made this   30th  day of
AUGUST, 2006          , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the
undersigned (the "Borrower") to secure Borrower's Home Equity Line of Credit Agreement and Disclosure
Statement ("HELOC") entered into with SOUTHSTAR FUNDING, LLC

("Lender")
of the same date and covering the Property described in the Security Instrument and located at:
933 W. RAINBOW FALLS WAY
ORANGE, CALIFORNIA 92865
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in  Covenants, Conditions
and Restrictions          DECLARATIONS AND COVENANTS
("Declaration"). The Property is a part of a planned unit development known as

RIVER TRAIL
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD ("Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document that creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower promptly shall pay, when due, all dues
and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property that is satisfactory to Lender and
that provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage, and any other hazards, including, but
not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation
under Section 3 to maintain property insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.
What Lender requires as a condition of this waiver can change during the term of the HELOC.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage
provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following
a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower
hereby are assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by
the Security Instrument, whether or not then due, with any excess, if any, paid to Borrower.

C.  Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.  Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, hereby are assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 6.

E.  Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

   (i)   the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

   (ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

   (iii) termination of professional management and assumption of self-management of the Owners Association; or

   (iv)  any action that would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.  Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional indebtedness of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the HELOC rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JULIE  BOS          -Borrower

_____ (Seal)
PETER A.  BOS          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower