1  Stuart W. Price, California Bar No. 125918
   swprice@bryancave.com
2  Sean D. Muntz, California Bar No. 223549
   sean.muntz@bryancave.com
3  Helen A. Chang, California Bar No. 205265
   changh@bryancave.com
4  **BRYAN CAVE LLP**
5  3161 Michelson Drive, Suite 1500
   Irvine, California  92612-4414
6  Telephone:  (949) 223-7000
7  Facsimile:   (949) 223-7100

8  Attorneys for Defendants
   JPMORGAN CHASE BANK, N.A. (erroneously sued as "JP MORGAN CHASE,
9  NA") and WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE
   FOR THE CERTIFICATE HOLDERS OF STRUCTURED ASSET MORTGAGE
10 INVESTMENTS II INC. BEAR STEARNS MORTGAGE FUNDING TRUST
   2007-AR5 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR5
11 (erroneously sued as "WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE
12 BEAR STEARNS MORTGAGE FUNDING TRUST 2007-AR5)

13            **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| PETER BOS, an individual, and JULIE BOS, an individual, | Case No. SACV11-1951 DOC (ANX) |
| Plaintiffs, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION BY DEFENDANTS JPMORGAN CHASE BANK, N.A. AND WELLS FARGO BANK, N.A. TO DISMISS PLAINTIFFS' COMPLAINT AND EXPUNGE LIS PENDENS** |
| vs. | |
| WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE BEAR STEARNS MORTGAGE FUNDING TRUST 2007-AR5; NATIONAL DEFAULT SERVICING CORPORATION; JP MORGAN CHASE, NA, and DOES 1 to 10 inclusive, | [Filed with Notice of Motion and Motion to Dismiss; Mem. of Points and Authorities; and [Proposed] Order] |
| Defendants. | Hon. David O. Carter Courtroom 9D |
| | Date:        February 27, 2012 Time:        8:30 a.m. Courtroom: 9D |

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

IR01DOCS527173.1

1   **TO PLAINTIFFS, AND THE CLERK OF THE ABOVE-ENTITLED**

2   **COURT:**

3     **PLEASE TAKE NOTICE** that on February 27, 2012, at 8:30 a.m., or as

4   soon thereafter as the matter may be heard in Courtroom 9D of the above-entitled

5   Court, located at 411 West Fourth Street, Santa Ana, California  92701, defendants

6   JPMorgan Chase Bank, N.A. and Wells Fargo Bank, National Association as

7   Trustee for the Certificate holders of Structured Asset Mortgage Investments II Inc.

8   Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through

9   Certificates, Series 2007-AR5 (erroneously sued as "Wells Fargo Bank, N.A. As

10  Trustee For The Bear Stearns Mortgage Funding Trust 2007-AR5) (collectively,

11  "Defendants") will, and do, respectfully request that the Court take judicial notice,

12  pursuant to Federal Rule of Evidence 201 and *Branch v. Tunnell*, 14 F.3d 449, 454

13  (9th Cir. 1994), of the documents attached to this Request for Judicial Notice as

14  Exhibits A through G.

15    Exhibit A:   Deed of Trust recorded in the Official Records of Orange County

16  on November 3, 2006, as document No. 2006000745470, encumbering the real

17  property located at 933 West Rainbow Falls Way, Orange, California  92865 (the

18  "Property").

19    Exhibit B:   Corporation Assignment of Deed of Trust recorded in the

20  Official Records of Orange County on September 17, 2010, as document No.

21  2010000462497, regarding the Property.

22    Exhibit C:   Substitution of Trustee recorded in the Official Records of

23  Orange County on September 17, 2010, as document No. 2010000462498,

24  regarding the Property.

25    Exhibit D:   Notice of Default and Election to Sell under Deed of Trust

26  recorded in the Official Records of Orange County on November 5, 2009, as

27  document No. 2009000603952, regarding the Property.

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

REQUEST FOR JUDICIAL NOTICE

1      Exhibit E:   Notice of Trustee's Sale recorded in the Official Records of

2   Orange County on September 17, 2010, as document No. 2010000462499,

3   regarding the Property.

4      Exhibit F:   Trustee's Deed Upon Sale recorded in the Official Records of

5   Orange County on February 22, 2011, as document No. 2011000094494, regarding

6   the Property.

7      Exhibit G:   Notice of Lis Pendens recorded in the Official Records of

8   Orange County on January 7, 2011, as document No. 2011000013156, regarding the

9   Property.

10      Defendants make this request in support of their Motion to Dismiss Plaintiffs'

11   Complaint and Expunge Lis Pendens.  This request is based on the attached

12   Memorandum of Points and Authorities, all pleadings and records on file in this

13   action, and such briefing, papers and argument as may be permitted in this matter.

14

15   Dated:  January 11, 2012

                                      Stuart W. Price

16                                     Sean D. Muntz

17                                     Helen A. Chang

                                     **BRYAN CAVE LLP**

18                                     By:

19                                       Helen A. Chang

20                                       Attorneys for Defendants

                                       JPMORGAN CHASE BANK, N.A.

21                                     (erroneously sued as "JP MORGAN

                                     CHASE, NA") and WELLS FARGO

22                                     BANK, NATIONAL ASSOCIATION AS

                                     TRUSTEE FOR THE CERTIFICATE

23                                     HOLDERS OF STRUCTURED ASSET

                                     MORTGAGE INVESTMENTS II INC.

24                                     BEAR STEARNS MORTGAGE

25                                     FUNDING TRUST 2007-AR5

                                     MORTGAGE PASS-THROUGH

26                                     CERTIFICATES, SERIES 2007-AR5

                                     (erroneously sued as "WELLS FARGO

27                                     BANK, N.A. AS TRUSTEE FOR THE

                                     BEAR STEARNS MORTGAGE

28                                       FUNDING TRUST 2007-AR5)

## MEMORANDUM OF POINTS AND AUTHORITIES

Documents not physically attached to the complaint may be considered by the Court on a Rule 12(b)(6) motion if the complaint refers to such document, the document is central to plaintiff's claims, and there is no question concerning the authenticity of the document. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.3 (2d Cir. 2002).

Pursuant to Federal Rule of Evidence 201, defendants JPMorgan Chase Bank, N.A. and Wells Fargo Bank, National Association as Trustee for the Certificate holders of Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5 (erroneously sued as "Wells Fargo Bank, N.A. As Trustee For The Bear Stearns Mortgage Funding Trust 2007-AR5) (collectively, "Defendants") therefore request that the Court take judicial notice of the following documents in consideration of Defendants' concurrently-filed Motion to Dismiss Complaint and Expunge Lis Pendens under Rule 12(b)(6) of the Federal Rules of Civil Procedure:

Exhibit A:   Deed of Trust recorded in the Official Records of Orange County on November 3, 2006, as document No. 2006000745470, encumbering the real property located at 933 West Rainbow Falls Way, Orange, California 92865 (the "Property").

Exhibit B:   Corporation Assignment of Deed of Trust recorded in the Official Records of Orange County on September 17, 2010, as document No. 2010000462497, regarding the Property.

Exhibit C:   Substitution of Trustee recorded in the Official Records of Orange County on September 17, 2010, as document No. 2010000462498, regarding the Property.

Exhibit D:   Notice of Default and Election to Sell under Deed of Trust recorded in the Official Records of Orange County on November 5, 2009, as document No. 2009000603952, regarding the Property.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

MEM. OF POINTS AND AUTHORITIES

1       Exhibit E:   Notice of Trustee's Sale recorded in the Official Records of

2   Orange County on September 17, 2010, as document No. 2010000462499,

3   regarding the Property.

4       Exhibit F:   Trustee's Deed Upon Sale recorded in the Official Records of

5   Orange County on February 22, 2011, as document No. 2011000094494, regarding

6   the Property.

7       Exhibit G:   Notice of Lis Pendens recorded in the Official Records of

8   Orange County on January 7, 2011, as document No. 2011000013156, regarding the

9   Property.

10       Under Federal Rule of Evidence 201, a fact is judicially noticeable when it is

11   capable of accurate and ready determination by resort to sources whose accuracy

12   cannot reasonably be questioned.  Documents not physically attached to the

13   complaint may be considered by the Court on a Rule 12(b)(6) motion if the

14   complaint refers to such document, the document is central to the plaintiff's claims,

15   and there is no question concerning the authenticity of the document.  *Branch v.*

16   *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith*

17   *v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).  The Court may

18   consider writings not attached to a complaint even if a plaintiff omits reference to

19   such writings when the plaintiff's claims are predicated on such documents.

20   *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded by statute*

21   *on other grounds.*

22       The Court's consideration of the attached documents does not convert

23   Defendant's Rule 12(b)(6) motion into a motion for summary judgment.  *Branch v.*

24   *Tunnell, supra,* 14 F.3d 449 at 454; Schwarzer, Tashima & Wagstaffe, *Federal Civil*

25   *Procedure Before Trial* (2005), 9:212.1b.

26       The conditions for considering the attached documents are met here.  The

27   loan documents of plaintiffs Peter and Julie Bos (collectively, "Plaintiffs") are

28   referenced throughout the Complaint, they are central to Plaintiffs' claims against

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

MEM. OF POINTS AND AUTHORITIES

1   Defendants, and there are no questions concerning their authenticity.  Exhibits A

2   through G were recorded in the Official Records of Orange County.  The Court may

3   take judicial notice of the documents as official records not subject to reasonable

4   dispute and capable of accurate and ready determination.

5        Further, it would be exceedingly difficult, if not impossible, for the Court to

6   assess the validity of Plaintiffs' claims without considering Exhibits A through G, as

7   they establish each parties' rights and obligations under Plaintiffs' loan documents

8   and Plaintiffs' standing to bring this action.

9        Accordingly, Defendants respectfully request that the Court take judicial

10  notice of the attached Exhibits A through G, in considering Defendants' Motion to

11  Dismiss Plaintiffs' Complaint and Expunge Lis Pendens.

12

13  Dated:  January 11, 2012                    Stuart W. Price
                                                 Sean D. Muntz
14                                               Helen A. Chang
15                                               **BRYAN CAVE LLP**

16                                               By: _Helen_ (signature)
17                                                    Helen A. Chang
18                                               Attorneys for Defendants
                                                 JPMORGAN CHASE BANK, N.A.
19                                               (erroneously sued as "JP MORGAN
                                                 CHASE, NA") and WELLS FARGO
20                                               BANK, NATIONAL ASSOCIATION AS
                                                 TRUSTEE FOR THE CERTIFICATE
21                                               HOLDERS OF STRUCTURED ASSET
                                                 MORTGAGE INVESTMENTS II INC.
22                                               BEAR STEARNS MORTGAGE
                                                 FUNDING TRUST 2007-AR5
23                                               MORTGAGE PASS-THROUGH
                                                 CERTIFICATES, SERIES 2007-AR5
24                                               (erroneously sued as "WELLS FARGO
                                                 BANK, N.A. AS TRUSTEE FOR THE
25                                               BEAR STEARNS MORTGAGE
                                                 FUNDING TRUST 2007-AR5)
26

27

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

IR01DOCS527173.1

MEM. OF POINTS AND AUTHORITIES

Exhibit A

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

| | | 60.00 |

**2006000745470 01:59pm 11/03/06**

108 73 D11 19

0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

After Recording Return To:

SOUTHSTAR FUNDING, LLC

400 NORTHRIDGE ROAD, SUITE 1000

ATLANTA, GA 30350

4310530

4130530

APN 374-731-45          [Space Above This Line For Recording Data]

LOAN NO. 2118107769

MIN: 1001908-2118107769-1   **DEED OF TRUST**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 30, 2006      , together with all Riders to this document.

(B) "Borrower" is JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

(C) "Lender" is SOUTHSTAR FUNDING, LLC

Lender is      LLC                                         organized and existing under the laws of
DELAWARE                      . Lender's address is  400 NORTHRIDGE ROAD, SUITE
1000, ATLANTA, GEORGIA 30350

(D) "Trustee" is   KIRK K. SMITH,

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888)679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  AUGUST 30, 2006
The Note states that Borrower owes Lender  FOUR HUNDRED SIXTY-FOUR THOUSAND AND NO/100

Dollars (U.S. $    464,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    OCTOBER 1, 2046

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider                ☒ Planned·Unit Development Rider   ☒ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider          LEGAL ATTACHED

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  3/01
UCAMERS 01-11/00      4SS55.14122                       Page 1 of 12

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     COUNTY                                of

                                                                                        [Type of Recording Jurisdiction]
ORANGE                                          :
       [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of   933 W. RAINBOW FALLS WAY
ORANGE                                                  [Street]
                    , California  92865    ("Property Address"):
       [City]                               [Zip Code]

       TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                              Form 3005  1/01
UICAMERS.02-11/00     45855.14722                           Page 2 of 12

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.03-11/00       45855.14122                          Page 3 of 12                                        Form 3005   1/01

ORANGE,CA     DOCUMENT: TD 2006.745470                                                      Page 3 of 19

Printed on 1/3/2012 8:05:52 AM          Provided by DataTrace System

Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.04-11/00       45855.14122                                    Page 4 of 12                                    Form 3005   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application.   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   Mortgage Insurance.   If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non- refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance   reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of  Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.07-11/00      45855.14122                          Page 7 of 12                                                    Form 3005   1/01



12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys'fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  Notices.  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  Governing Law; Severability; Rules of Construction.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

*PB  JB*

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

*PB*  *GB*

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials;  (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any  private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
JULIE BOS                Borrower

_____ (Seal)
PETER A. BOS              Borrower

_____ (Seal)
                         Borrower

_____ (Seal)
                         Borrower

_____ (Seal)
                         Borrower

_____ (Seal)
                         Borrower

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.11-11/00      45855.14122              Page 11 of 12                    Form 3005   1/01

[Space Below This Line for Acknowledgment]

State of California
County of  Orange

On  8-30-06  before me, Cynthia P Lanning Notary, personally appeared   JULIE BOS AND PETER
A. BOS
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature  Cynthia L Lanning                    (Seal)

Cynthia L. Lanning

CYNTHIA P. LANNING
COMM. #1572861
Notary Public - California
Orange County
My Comm. Expires Apr. 25, 2009

|||||||||||||||||  BOS
10578093
FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST
|||||||||||||||||||||||||

When recorded mail to:
First American Title Insurance
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
Attn: NRP Team

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.12-12/05     45855.14122                    Page 12 of 12                       Form 3005   1/01

# EXHIBIT "A"

PARCEL 1:

LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25 TO 29
INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE STREETS SHOWN AS LOTS A AND B OF
TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS
MAPS, RECORDS OF ORANGE COUNTY.

LOAN NO. 2118107769

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th day of AUGUST, 2006                     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to  SOUTHSTAR FUNDING, LLC

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
933 W. RAINBOW FALLS WAY, ORANGE, CALIFORNIA 92865

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
Covenants, Conditions and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
RIVER TRAIL

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender.  Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               Form 3150  1/01
UR00(3150.01-01/06  45855.14722                              Page 1 of 2

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
JULIE BOS                Borrower         PETER A. BOS            Borrower

_____ (Seal)          _____ (Seal)
                         Borrower                                 Borrower

_____ (Seal)          _____ (Seal)
                         Borrower                                 Borrower

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150  1/01
URXX3150.02-01/06   45855.14122                                    Page 2 of 2

## ADJUSTABLE RATE RIDER
(MTA-Twelve Month Average Index - Payment Caps)

LOAN NO. 2118107769

THIS ADJUSTABLE RATE RIDER is made this 30th day of  AUGUST, 2006          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to ("Lender") of the same date and covering the
property described in the Security Instrument and located at:

933 W. RAINBOW FALLS WAY
ORANGE, CALIFORNIA 92865

[Property Address]

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE
NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

2.  INTEREST
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will
pay interest at a yearly rate of     1.750     %.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of the Note.

MTA ARM Rider
HP451328-11/05   45866.14122                          Page 1 of 4

**(B) Interest Rate Change Dates**
   The interest rate I will pay may change on the 1st   day of NOVEMBER, 2006   ,
and on that day every month thereafter. Each date on which my interest rate could change is called an
"Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change
Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with
Section 3.

**(C) Index**
   Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an
Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States
Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board
in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields").
The Twelve Month Average is determined by adding together the Monthly Yields for the most recently
available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days
before each Interest Rate Change Date is called the "Current Index".
   If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**
   Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 45/100-----       percentage point(s)  3.450  % ("Margin") to
the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth
of one percentage point (0.125%). The rounded amount will be my new interest rate until the next Interest
Rate Change Date. My interest will never be greater than    9.950   %. Beginning with the first
Interest Rate Change Date, my interest rate will never be lower than the Margin.

3.   **PAYMENTS**
   **(A) Time and Place of Payments**
   I will make a payment every month.
   I will make my monthly payments on the   1st     day of each month beginning on
NOVEMBER 1, 2006     . I will make these payments every month until I have paid all the
Principal and Interest and any other charges described below that I may owe under this Note. Each
monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on   OCTOBER 1, 2046         , I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  400 NORTHRIDGE ROAD, SUITE 1000,
ATLANTA, GEORGIA 30350        or at a different place if required by the Note Holder.

   **(B) Amount of My Initial Monthly Payments**
   Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $   1,344.83          unless adjusted under Section 3 (F).

   **(C) Payment Change Dates**
   My monthly payment may change as required by Section 3(D) below beginning on the  1st
day of   NOVEMBER, 2007       , and on that day every 12th month thereafter. Each of these
dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F)
or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum
amount Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the
amount of the interest due then negative amortization will occur.
   I will pay the amount of my new Minimum Payment each month beginning on each Payment Change
Date or as provided in Section 3(F) or 3(G) below.

MTA ARM Rider
HP431329-11/05   45855.14122                    Page 2 of 4

(D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date.  The result of this calculation is called the "Full Payment."  Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment.  This 7.5% limitation is called the "Payment Cap."  This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.  The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment."  Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.  I also have the option to pay the Full Payment for my monthly payment.

(E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments.  For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2.  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

(F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to  ONE HUNDRED AND FIFTEEN            percent (  115.00%  ) of the Principal amount I originally borrowed.  My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases.  In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment.  This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap.  The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G)  Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again.  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H)  Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options."  I may be given the following Payment Options:

(i)  Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate.  The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments.  This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

MTA ARM Rider
HP431330-11/05  45855.14122                          Page 3 of 4

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JULIE BOS                -Borrower

_____ (Seal)
PETER A. BOS             -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MTA ARM Rider
HP431331-11/05   4585S.14122          Page 4 of 4

ORANGE,CA     DOCUMENT: TD 2006.745470                    Page 19 of 19

Printed on 1/3/2012 8:05:53 AM          Provided by DataTrace System

Exhibit B

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

**9.00**

**2010000462497 10:38am 09/17/10**

217 405 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC NO.: 09-34783-FF-CA
LOAN NO.: 0015019680
MIN NO.: 1001908-2118107769-1
APN: 374-731-45
09075512?

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5** all beneficial interest under that certain Deed of Trust dated 08/30/2006 executed by **JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS** Trustor, to **KIRK K. SMITH** Trustee, and recorded on **11/03/2006, as Instrument No. 2006000745470 (or Book, Page)** of Official Records of ORANGE County, CA describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Date : 11-18-09

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ISAOA AS NOMINEE FOR SOUTHSTAR FUNDING, LLC.**

By :   **Greg Allen**
It s:                        Vice President

STATE OF   Mn
COUNTY OF  Dakota

On  NOV 18  , 20 09 , before me,  James A. Chua , a Notary Public for said State, personally appeared  **Greg Allen**  who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of  mn  that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____

JAMES A. CHUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

Exhibit C

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||| **12.00**

**2010000462498** 10:38am 09/17/10

217 405 S15 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**RECORDING REQUESTED BY:**
LPS Title Company - CA
**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.   : 09-34783-FF-CA
Loan No.          : 0015019680

APN             : 374-731-45
(19075512)

## SUBSTITUTION OF TRUSTEE

WHEREAS, **JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS** was the original Trustor(s), **KIRK K. SMITH** was the original Trustee and **MERS - NOMINEE FOR SOUTHSTAR FUNDING, LLC.** was the original Beneficiary under that certain Deed of Trust dated **08/30/2006** and recorded on **11/03/2006** as instrument No. 2006000745470 in Book, Page, of Official Records of **ORANGE** County, State of **CA** and

WHEREAS, the undersigned is the present beneficiary under the said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes **NATIONAL DEFAULT SERVICING CORPORATION, An Arizona Corporation,** whose address is 7720 N. 16th Street, Suite 300, Phoenix, Arizona 85020, as Trustee under said Deed of Trust.

Whenever the context hereof requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Wells Fargo Bank, National Association as Trustee for the Certificatcholders of Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5 by EMC Mortgage Corporation as Attorney in fact

Dated : 11/18/09

By :   **Greg Allen**
Its :   **Vice President**

STATE OF ___MN___
COUNTY OF ___Dakota___

On ___Nov 18___, 20_09_, before me, _____Shoua Moua_____, a Notary Public for said State, personally appeared _____Greg Allen_____ who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of ___MN___ that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____

SHOUA MOUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012

*National Default Servicing Corporation*

## SUBSTITUTION OF TRUSTEE
## AFFIDAVIT OF MAILING

**NDSC File No. :     09-34783-FF-CA**

On this day, September 16, 2010, I personally mailed by certified mail a copy of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution, and a copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said Section.

I declare under penalty of perjury that the foregoing is true and correct.

*Calla Washington*

CALLA WASHINGTON, TRUSTEE SALES REPRESENTATIVE

**X     Substitution of Trustee**

JULIE BOS
933 W. RAINBOW FALLS WAY
ORANGE, CA  92865

PETER A. BOS
933 W. RAINBOW FALLS WAY
ORANGE, CA  92865

JULIE BOS
PO BOX 28115
ANAHEIM, CA  92809

PETER A. BOS
PO BOX 28115
ANAHEIM, CA  92809

SOUTHSTAR FUNDING, LLC
400 NORTHRIDGE ROAD, SUITE 1000
ATLANTA, GA  30350

MORTGAGE    ELECTRONIC    REGISTRATION
SYSTEMS, INC. ("MERS")

PO BOX 2026
FLINT, MI  48501-2026

SOUTHSTAR FUNDING, LLC
C/O MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.
P.O. BOX 2026
FLINT, MI  48501-2026

JULIE BOS
933W W RAINBOW FALLS WAY
ORANGE, CA  92865-2046

PETER A. BOS
933W W RAINBOW FALLS WAY
ORANGE, CA  92865-2046

RIVERTRAIL    HOMES    COMMUNITY
ASSOCIATION
C/O LORDON MANAGEMENT CO.
1275 CENTER COURT DR.
COVINA, CA  91724

# Exhibit D

**RECORDING REQUESTED BY:**
LPS Title Company - CA
**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No. :   09-34783-FF-CA
Loan No.    :   0015019680
Title Order No. :  090755127

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||   **12.00**

**2009000603952 03:47pm 11/05/09**

108 73 N15 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

APN: 374-731-45

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $43,430.52, as of 11/05/2009 and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

[Page 1 of 2]

NDSC File No. :   09-34783-FF-CA
Loan No.      :   0015019680

EMC Mortgage Corporation
c/o National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020     Phone 602-264-6101   Sales Website: www.ndscorp.com/sales

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is either the original Trustee, the duly appointed substituted Trustee or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 08/30/2006, executed by JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of MERS - NOMINEE FOR SOUTHSTAR FUNDING, LLC. as beneficiary recorded 11/03/2006, as Instrument No. 2006000745470 (or Book, Page)   of Official Records in the Office of the County Recorder of  ORANGE County, CA.  Said obligations including ONE NOTE FOR THE ORIGINAL sum of $464,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :   FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 10/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEY'S FEES.

That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b} declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

Dated  :        November 5, 2009
EMC Mortgage Corporation, as Beneficiary by National Default Servicing Corporation, as Agent for the Beneficiary by LPS Title Company - CA,  as Agent for National Default Servicing Corporation

By :

[Page                    2              of                2]

Lucille McCord

Exhibit E

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   **9.00**

**2010000462499 10:38am 09/17/10**

217 405 N34 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
NATIONAL DEFAULT SERVICING CORPORATION
7720 N. 16ᵗʰ Street, Suite 300
Phoenix, AZ 85020
(190-755127)

T.S. No. 09-34783-FF-CA

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, (cashier's check(s) must be made payable to National Default Servicing Corporation), drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state; will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made in an "as is" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS**
Duly Appointed Trustee: **NATIONAL DEFAULT SERVICING CORPORATION**
Recorded **11/03/2006** as Instrument No. **2006000745470** of Official Records in the office of the Recorder of ORANGE County, California.
Date of Sale: **10/13/2010 at 12:00 P.M.**
Place of Sale: **At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, CA**
Estimated amount of unpaid balance and other charges: **$556,232.13**
Street Address or other common designation of real property: **933 W. RAINBOW FALLS WAY, ORANGE, CA 92865**
A.P.N.: **374-731-45**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale. If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

Regarding the property that is the subject of this Notice of Sale, the "mortgage loan servicer" as defined in California *Civil Code* Section 2923.53 (k) (3) declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to California *Civil Code* Section 2923.53 and that the exemption is current and valid on the date this Notice of Sale is recorded. The timeframe for giving a Notice of Sale specified in Subdivision (a) Section 2923.52 does not apply to this Notice of Sale pursuant to California *Civil Code* Sections 2923.52 or 2923.55.

Date: 09/15/2010

**NATIONAL DEFAULT SERVICING CORPORATION**
**7720 N. 16ᵗʰ Street, Suite 300**
**Phoenix, AZ 85020   phone 602-264-6101**
**Sales Line 714-730-2727; Sales Website: www.ndscorp.com/sales**

Nichole Alford, TRUSTEE SALES REPRESENTATIVE

Exhibit F

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   **12.00**

**2011000094494 08:00am 02/22/11**

10 405 T09 3

0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

RECORDING REQUESTED BY :
.

WHEN RECORDED MAIL TO :
**Wells Fargo Bank, National Association**
**2780 Lake Vista Drive**
**Lewisville, TX 75067**
FORWARD TAX STATEMENTS TO:
**Wells Fargo Bank, National Association**
**2780 Lake Vista Drive**
**Lewisville, TX 75067**

APN: 374-731-45

| NDSC File No. | : | 09-34783-FF-CA |
| Loan No. | : | 0015019680 |
| Title Order No. | : | 090755127 |

## TRUSTEE'S DEED UPON SALE

Transfer Tax :
The Grantee herein **WAS** the Beneficiary
The amount of the unpaid debt was **$570,774.88**
The amount paid by the Grantee was **$570,878.89**
The property is in the city of **ORANGE**, County of **ORANGE**, State of **CA**.

**National Default Servicing Corporation, an Arizona Corporation**, as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without any covenant or warranty to :

**Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5**

herein called Grantee, the following described real property situated in **ORANGE** County :

**PARCEL 1:**
**LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.**
**PARCEL 2:**
**AN EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE STREETS SHOWN AS LOTS A AND B OF TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY.**

This conveyance is made pursuant to the powers conferred upon Trustee by said Deed of Trust executed **JULIE BOS AND PETER A. BOS, WIFE AND HUSBAND, AS JOINT TENANTS** , as Trustor, recorded on **11/03/06**, Instrument No. **2006000745470** Official Records in the Office of the County Recorder of **ORANGE** County, CA.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **02/10/11** Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, which amount was **$570,878.89.**

Dated : 2/17/11                          National Default Servicing Corporation, an Arizona Corporation

By: _____

**Anna Lamb, Trustee Sales Officer**

**STATE OF ARIZONA**
**COUNTY OF MARICOPA**

On _____2-17_____, 2011, before me, __Pamela Cardy_____, a Notary Public for said State, personally appeared _Anna Lamb__ who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing is true and correct.

**WITNESS** MY HAND AND OFFICIAL SEAL

*Pamela Cardy*
*Notary Public - Arizona*
*MARICOPA COUNTY*
*My Commission Expires*
*JUNE 8, 2011*

# Exhibit G

1   **RECORDING REQUESTED BY**
   **AND WHEN RECORDED MAIL TO:**
2

3   Jerry Salcido (SBN: 233282)
  **SALCIDO LAW FIRM PLLC**
4   43 W 9000 S, Suite B
  Sandy, Utah 84070
5   Tel: (801) 413-1753
  Fax: (801) 618-1380
6   jerry@salcidolaw.com

7   Attorney for Plaintiff
  JULIE AND PETER A. BOS

8   A.P.N. 374-731-45

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

2011000013156 11:56 am 01/07/11

62 417 N25   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10       **FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

11              **UNLIMITED JURISDICTION**

12   JULIE AND PETER A. BOS, husband and wife    Case No. 30-2011-00438011-CU-OR-CJC

13        Plaintiffs,             **NOTICE OF LIS PENDENS**

14       v.

15   SOUTHSTAR FUNDING, LLC, a foreign
  corporation; KIRK K. SMITH, Trustee;
16   MORTGAGE ELECTRONIC
  REGISTRATION SYSTEMS, INC., a foreign
17   corporation; NATIONAL DEFAULT
  SERVICING CORPORATION, a foreign
18   corporation; LPS TITLE COMPANY, a
  California corporation; EMC MORTGAGE
19   CORPORATION, a foreign corporation; and
  JOHN AND JANE DOES 1-100, unknown real-
20   parties-in-interest,

21

22        Defendants

23     Notice is given that the above-entitled action was filed in the above-entitled court on January

24   4, 2011, by Plaintiffs JULIE AND PETER A. BOS against all parties named above, including anyone

25   who claims interest in the following real property located in Orange County, California:

26

27

28

1   All that certain real property situated in the State of California, County of Orange, described as

2   follows:

3

4   PARCEL 1:

5   LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25
    TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY,
6   CALIFORNIA.

7   PARCEL 2:

8   AN EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE STREETS SHOWN AS
9   LOTS A AND B OF TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29
    INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY.

10  APN:  374-731-45

11

12  Dated  06  /  January  / 2011

13

14  _Jerry Salcido_

15  Jerry Salcido

16

17  On the  6  day of  January , 2011,

18  _Jerry Salcido_                          personally appeared before me and
    signed the foregoing instrument, who acknowledged to me that he/she voluntarily executed the same.

19

20

21  _Obel_

22  Notary Public

23  Residing at:

24

25  My commission expires:

26

27

28

Salcido Law Firm PLLC
43 W 9000 S, Ste B
Sandy UT 84070
(801) 207-8212

                                2

                    NOTICE OF LIS PENDENS

                                        Case No. 30-2011-00438011-CU-OR-CJC

**PROOF OF SERVICE**
CCP 1013a(3) Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  3161 Michelson Drive, Suite 1500, Irvine, CA  92612-4414.

    On January 12, 2012, I served the following document(s) described as:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION BY DEFENDANTS JPMORGAN CHASE BANK, N.A. AND WELLS FARGO BANK, N.A. TO DISMISS PLAINTIFFS' COMPLAINT AND EXPUNGE LIS PENDENS**

on all interested parties in this action by placing [X] a true copy [ ] the original thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Michael Thompson | ***Attorneys for Plaintiffs, Peter Bos and Julie Bos*** |
| Prosper Law Group, LLP | |
| 6100 Center Drive, Suite 1050 | Phone:  (310) 893-6211 |
| Los Angeles, CA 90045 | Fax:    (310) 988-2930 |
| | E-mail:  <u>Michael@prosperlaw.com</u> |

    [ ] BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    ☒] BY CM/ECF NOTICE OF ELECTRONIC FILING:  I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

    [☒] FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on January 12, 2012, at Irvine, California.

*Catherine Amante*
Catherine Amante

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

527423.1