**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
Michael E. Thompson, Esq., SBN 266275
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:   (310) 893-6200
Facsimile:   (310) 988-2930
Email:       deborah@prosperlaw.com

Attorneys for Plaintiffs,
Peter Bos and Julie Bos

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER BOS, an individual, and JULIE BOS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A. AS TRUSTEE FOR THE BEAR STEARNS MORTGAGE FUNDING TRUST 2007-AR5; NATIONAL DEFAULT SERVICING CORPORATION; JP MORGAN CHASE, NA, and Does 1 – 10, inclusive, <br><br> Defendants. | Case No. SACV 11-1951 DOC (JPRx) <br> **SECOND AMENDED COMPLAINT FOR:** <br> 1. **DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]** <br> 2. **QUASI CONTRACT** <br> 3. **VIOLATION OF 15 U.S.C. § 1692e** <br> 4. **VIOLATION OF 12 U.S.C. § 2605** <br> 5. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.** <br> 6. **ACCOUNTING** <br> 7. **BREACH OF CONTRACT** <br> 8. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 9. **WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE** <br> 10. **TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE** <br><br> **DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.    STATEMENT OF THE CASE..................................................................3

II.   JURISDICTION, VENUE, AND PARTIES.......................................................4

III.  FACTUAL ALLEGATIONS....................................................................6

IV.   FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE STATUS OF
      DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202].....................................12

V.    SECOND CAUSE OF ACTION – QUASI CONTRACT.........................................15

VI.   THIRD CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e............................16

VII.  FOURTH CAUSE OF ACTION –  VIOLATION OF 12 U.S.C. § 2605............................22

VIII. FIFTH CAUSE OF ACTION – BUS. AND PROF. CODE SECTION 17200, ET SEQ......24

IX.   SIXTH CAUSE OF ACTION – ACCOUNTING...............................................28

X.    SEVENTH CAUSE OF ACTION – BREACH OF CONTRACT.................................30

XI.   EIGHTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
      AND FAIR DEALING.....................................................................32

XII.  NINTH CAUSE OF ACTION – WRONGFUL FORECLOSURE AND TO SET ASIDE
      TRUSTEE'S SALE.......................................................................35

XIII. TENTH CAUSE OF ACTION – TO VOID OR CANCEL TRUSTEE'S DEED UPON
      SALE.................................................................................38

# COMPLAINT

COMES NOW Plaintiffs Peter Bos ("Mr. Bos") and Julie Bos ("Mrs. Bos") (collectively, the "Plaintiffs"), by and through their counsel, for their Second Amended Complaint against Defendants JP Morgan Chase Bank, N.A (in its capacity as purported mortgage servicer) (hereinafter "**JPMorgan**"), National Default Servicing Corporation (in its capacity as purported foreclosing trustee) (hereinafter "**National**"), and Wells Fargo Bank, N.A. as Trustee for the Bear Stearns Mortgage Funding Trust 2007-AR5 (in its capacity as purported beneficiary and assignee of Plaintiffs' Note and Mortgage) (hereinafter "**Wells Fargo**") (collectively "Defendants"), plead as follows:

## I.   STATEMENT OF THE CASE

1.    On August 30, 2006, Plaintiffs executed a promissory note ("Note") in favor of Southstar Funding, LLC ("Southstar"), in the amount of $464,000 secured by a deed of trust ("Deed of Trust" or "Mortgage") for the finance of real property located at 933 W. Rainbow Falls Way, Orange, California 92865.  Subsequently, Defendants' failure to assign or transfer Plaintiffs' Note to Wells Fargo resulted in Defendants' inability to collect on the Note and enforce the Deed of Trust.  Despite Defendants' failure to perfect a security interest, Wells Fargo and its agents have attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so.  In addition to violating the Fair Debt Collection Practices and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the Orange County Recorder's Office.  Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of California Penal Code section 532(f)(a)(4).[1]  Through this action, Plaintiffs seek damages resulting from Defendants' unlawful conduct and a

---

[1] Defendants' recording of the Substitution of Trustee and the Corporation Assignment of Deed of Trust  violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

1   declaratory judgment establishing that Defendants have failed to substantiate a perfected

2   security interest in the Note and Deed of Trust (collectively referred to as "Loan").

3   Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and

4   Deed of Trust.

5        2.     In the alternative, if the Court finds that any of the Defendants have an

6   enforceable security interest in either the Note or Deed of Trust, Plaintiffs maintain that

7   Defendants have breached Section 2 of the Deed of Trust and the Implied Covenant of

8   Good Faith and Fair Dealing by charging improper fees and miscalculating and

9   misapplying payments to offset both principal and interest, in addition to the statutory

10   provisions listed above.

11   **II.    JURISDICTION, VENUE, AND PARTIES**

12        3.     This Court has original jurisdiction over the claims in this action based on

13   28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692e, 12 U.S.C. § 2605, and 42

14   U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to

15   address the deprivation of rights secured by federal law.

16        4.     This Court also has supplemental jurisdiction over the pendant state law

17   claims because they form a part of the same case or controversy under Article III of the

18   United States Constitution, pursuant to 28 U.S.C. § 1367.

19        5.     The unlawful conduct, illegal practices, and acts complained of and alleged

20   in this Complaint were all committed in the Central District of California and involved

21   real property that is located in the Central District of California.  Therefore, venue

22   properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

23        6.     Plaintiffs are now, and at all times mentioned herein, individuals residing in

24   the County of Orange, in the State of California.  At all times relevant to this action,

25   Plaintiffs have owned real property commonly known as 933 W. Rainbow Falls Way,

26   Orange, California 92865  (the "Property"), further described as Assessor's Parcel

27   Number 374-731-45, with the following description:

28

PARCEL 1:

LOT 40 OF TRACT NO. 10539, AS SHOWN ON A MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGREE OVER THE PRIVATE STREETS SHOWN AS LOTS A AND B OF TRACT 10539, AS PER MAP RECORDED IN BOOK 462, PAGES 25 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDED OF ORANGE COUNTY.

7.     At all relevant times, Wells Fargo Bank, N.A. is a national association organized under the laws of the United States with its main office in California.

8.     At all relevant times, JPMorgan Chase Bank, N.A. is a national association organized under the laws of the United States with its main office in Columbus, Ohio.

9.     At all relevant times, National Default Servicing Corporation is an Arizona corporation with its principal place of business in Arizona.

10.     Plaintiffs are ignorant of the true identity and capacity of Defendants designated as Does 1 - 10, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted.  However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiffs.  Plaintiffs further allege on information and belief that each such designated Defendants acted, and acts, as the authorized agent, representative, and associate of the other Defendant in doing the things alleged herein.

11.     Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

SECOND AMENDED COMPLAINT

12.     Any allegation about acts of any corporate or other business Defendant(s) means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

13.     At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

14.     At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

## III.     FACTUAL ALLEGATIONS

15.     On or about August 30, 2006, Mr. and Mrs. Bos executed a Note and Deed of Trust in favor of Southstar obtaining a Loan secured by the Property.

16.     On information and belief, Plaintiffs allege that sometime after the origination of their Loan, Southstar sold their Loan to another entity or entities. Those entities are currently unknown but will be identified through discovery.

17.     Plaintiffs allege that these unknown entities and Defendants were involved in an attempt to securitize their Loan into the Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5 ("Bear Stearns Trust"). *See* **Exhibit "A",** attached hereto is a securitization flow chart depicting the securitization process.

SECOND AMENDED COMPLAINT

18.     Securitization is a financing method whereby loans are made by loan originators, and the notes evidencing the debt are sold to a series of parties, the last of which is generally a Securitization Trust ("Trust").  The Trust pays for the notes with the proceeds of bonds or bond like instruments issued by the Trust.  The notes themselves are typically owned by the Trust, for the benefit of investors, who are sometimes called certificate-holders ("Investors"). The Investors are entitled to payment from the proceeds of the note repayments.  Since the bonds are secured by the proceeds of the notes, the bonds are known as "mortgage backed" securities.

19.     The Trust, being sued by its trustee, is a New York Corporate Trust formed to act as a Real Estate Mortgage Investment Conduits, or "REMICs," pursuant to the U.S. Internal Revenue Code.  REMICs are treated as pass-through vehicles for tax purposes and enjoy tax-free exemptions and bankruptcy remote protection.   Generally, non-compliance with REMIC requirements subjects a REMIC to loss of its tax-free status and bankruptcy-remote privileges.  The PSA, together with applicable New York Trust Law, forbid and void any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions of transactions.

20.     Typically, the owners of the mortgage backed securities are investors in large investment pools comprised of pension funds, insurance companies, and sovereign wealth funds.

21.     The mortgage payments for the Plaintiffs' Loans are not collected by the loan owners themselves.  Rather, the tasks of payment processing, escrow maintenance, loss mitigation and instituting and managing foreclosure are collectively known as "servicing".

22.     When the Servicers collect loan payments from the borrowers, the Servicers transfer those payments to the Trustee of the Trust ("Trustee"), which then distributes the payments to the Trust's beneficiaries i.e. the Investors. Therefore, each Trust is primarily administered by two entities: the Trustee, who is the "face" of each

1    Trust with the Investors, and the Servicer (sometimes called a Master Servicer), who is
2    the "face" of each Trust with the borrowers.  Because a Trustee holds the trust corpus
3    for the beneficiaries, a Servicer will act in the name of the Trustee when taking action
4    against borrowers, which includes the Servicers bringing foreclosure actions against
5    borrowers who are allegedly delinquent on their loan payments.

6       23. Plaintiffs allege that their Mortgage was not assigned, transferred, or
7    granted to the Bear Stearns Trust as required by the Trust Agreement.

8       24. In order for Plaintiffs' Mortgage to be a part of the Bear Stearns Trust, the
9    entities involved were required to follow various agreements and established laws,
10   including the Trust Agreement that governed the creation of the Trust.

11       a)  Specifically, Plaintiffs allege the entities involved in the attempted
12        securitization of Plaintiffs' Loan failed to adhere to the requirements of the
13        Trust Agreement necessary to properly assign the mortgage loan into the
14        Trust.

15       b)  As a result, Plaintiffs' Loan was not assigned to the Bear Stearns Trust and
16        is therefore not part of the Bear Stearns Trust res.

17       c)  This fatal defect renders Defendants third-party strangers to the underlying
18        debt obligation without the power or right to demand payment, declare
19        default, negotiate their Loan, or foreclose on the Property.

20       d)  Although Defendants are aware of this fact, they have and continue to act
21        as if they have authority to demand payment, declare default, negotiate
22        their Loan, and foreclose on their Property.  Plaintiffs specifically dispute
23        that the Loan is part of the Bear Stearns Trust.

24      25. Plaintiffs initiated loan modification negotiation efforts with their purported
25   servicer, JPMorgan, after experiencing unforeseen financial hardship.  Loan
26   modification is critical to homeowners, investors, the housing market, and the economy
27   because it is a financially superior alternative to foreclosure.  The California Legislature,
28   in enacting emergency legislation in 2008, declared:

SECOND AMENDED COMPLAINT

California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. . . . It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure.  These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided.  Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

S.B. 1137 § 1(a), (c) (enacted July 8, 2008).  The ability of a homeowner to work with his or her true servicer and note holder is thus critically relevant and meaningful.

26.    When Plaintiffs began loan modification efforts with JPMorgan, they relied on the representations made by Defendants that they were the true creditors with the power to collect payment and, most importantly, modify the Loan.  Plaintiffs believed their lender would be willing to accept their payments because they were willing to tender unconditionally, but needed the monthly payments restructured to reflect the downturn in their monthly gross income.

27.    After months of negotiation, follow up phone calls and resubmitting documents many times over, the Plaintiffs were told they did not qualify and were denied a loan modification.  Since then, Plaintiffs have learned that none of the Defendants have any legal or corporate authority to engage in debt collection activities against them.

SECOND AMENDED COMPLAINT

28. Plaintiffs' investigation has confirmed that there was an **attempt** to securitize the Mortgage. However, Plaintiffs allege that the Mortgage was never assigned or transferred to any of the parties involved in the securitization process.

29. Specifically, Plaintiffs allege that their Note and Mortgage were never validly assigned to the Bear Stearns Trust, or any of the Defendants, in the manner required by the Trust Agreement (a.k.a. the Pooling and Servicing Agreement).

30. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) their counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, complaints by Attorneys General from various states, and publicly available securitization documents and practices; (4) a review of the purported "Corporation Assignment of Deed of Trust" executed by "Greg Allen"; (5) a review of the purported "Substitution of Trustee" executed by "Greg Allen"; and (6) an audit of Wells Fargo's filings with the Securities and Exchange Commission ("SEC"), including Wells Fargo's 424B5 Prospectus and Pooling and Servicing Agreement ("PSA").

31. Plaintiffs' information and belief is further based on a Securitization Audit of their Note and Mortgage that they commissioned in order to help determine (1) the owner of their Loan, and (2) the secured/unsecured status of their Note and Mortgage.

32. Based on the findings of the Audit, Plaintiffs believe and allege thereon that their Note was supposed to be properly securitized as a mortgage-backed security that is, "pooled" together in a trust pool.

33. The Trust is regulated by New York Estates, Powers & Trust Law, including section 7-2.4. Section 11.06 of the PSA entitled "Governing Law" is an election by the parties to the Bear Stearns Trust that the Trust will be governed under the laws of the State of New York. *See* **Exhibit "B"**, attached hereto is a true and correct copy of Section 11.06 of the PSA.

34.     Plaintiffs allege that their Note was *not* properly securitized and that the Bear Stearns Trust has no legal, equitable, or monetary interest in their Promissory Note such that it can demand payment from them.

35.     Further, after conducting the Securitization Audit of Plaintiffs' chain of title and Wells Fargo's PSA, it was determined that Plaintiffs' Note and Mortgage were not properly conveyed into the Trust (if it was ever properly formed) because (1) the beneficial interest in Plaintiffs' Note and Mortgage were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Mortgage to the Trust) prior to the Closing Date of the Trust and, (2) Wells Fargo failed to perfect the title to Plaintiffs' Note and Mortgage by not *strictly* following the requirements of the PSA and other laws, regulations, and agreements that govern the administration of the Trust. As the purported Trustee of the Trust, Wells Fargo cannot take action which is not authorized by the agreements that created and govern the Trust. Wells Fargo's attempt to acquire an interest in Plaintiffs' Loan after the Closing Date indicated in the PSA is an ultra vires act that is violation of the Trust Agreement (i.e., the PSA).

36.     Plaintiffs allege that the Mortgage was not properly assigned to the Bear Stearns Trust within 180 days of June 29, 2007, the required "Closing Date," as set forth in the Trust Agreement. The "Closing Date" is the date by which all of the notes and mortgages must be transferred into the Bear Stearns Trust in order for the mortgage loan to be a part of the trust res. As such, Plaintiffs' Loan was never, and has never been, part of the Bear Stearns Trust res. *See* **Exhibit "C"**, attached hereto is a true and correct copy of sections 2.01 and 2.02 of the Trust Agreement containing these important requirements.

37.     Section 2.01 of the PSA outlines how mortgage loans are to be conveyed into the securitized mortgage trust. Specifically, in connection with any assignment, Section 2.01(b) requires:

In connection with the above transfer and assignment, the Sponsor hereby deposits with the Trustee or the Custodian, as its agent, with respect to each Mortgage Loan:

(i) the original Mortgage Note, endorsed without recourse (A) to the order of the Trustee or in blank or (B) in the case of a Mortgage Loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it, or lost note affidavit together with a copy of the related Mort-gage Note,

(ii) the original  Mortgage and, if the related Mortgage Loan is a MOM Loan, noting the presence of the MIN and language indicating  that such Mortgage Loan is a MOM Loan, which shall have been recorded (or if the original is not available, a copy), with evidence of such  recording  indicated thereon (or if clause (w) in the proviso below applies, shall be in recordable form)

(iii) unless the Mortgage Loan is a MOM Loan, a certified copy of the assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) in blank or to "Wells Fargo Bank, National Association, as Trus-tee", with evidence of recording with respect to each Mortgage Loan in the name of the Trus-tee thereon (or if clause (w) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland, Tennessee, South Carolina, Mississippi and Florida, or an Opinion of Counsel has been provided as set forth in this Section 2.01(b), shall be in recordable form),

(iv) all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon

(v) the  original  or a copy of the  policy  or  certificate  of primary  mortgage guaranty insurance, to the extent available, if any,

(vi) the original  policy of title  insurance or  mortgagee's certificate  of title insurance or commitment or binder for title insurance,  if available,  or a copy thereof, or, in the event that such original title  insurance  policy is unavailable,  a photocopy  thereof,  or in lieu thereof,  a current lien search on the related Mortgaged Property, and

(vii) originals of all modification agreements, if applicable and available…

38.   In further violation of Section 2.01 of the Trust agreement, Defendants failed to deposit specific documents, such as all endorsed promissory notes, the original recorded mortgage, and an assignment to the Trustee with the Custodian of Records of

SECOND AMENDED COMPLAINT                                                    12

1   the Bear Stearns Trust.  These documents were required to be deposited in order to

2   complete the assignment and transfer of Plaintiffs' Note and Mortgage to the Trust.

3        39.    Under New York Trust Law, an asset does not become trust property until

4   the asset is delivered to the trustee. Warren's Heaton on Surrogate's Court Practice 13

5   App. 4-46 (Linda B. Hirschson et al. eds., 7th ed. 2006) ("It has long been the law in

6   New York that to subject an asset to the terms of a trust that has an independent

7   trustee..., a grantor must have the intent to make a present gift to the trust and must

8   make sufficient delivery of the assets of the trust to the trustee.").  Moreover, NY

9   Estates, Powers and Trusts Law section 7-2.4 states, "If the trust is expressed in the

10   instrument creating the estate of the trustee, every sale, conveyance or other act of

11   the trustee in contravention of the trust, except as authorized by this article and by any

12   other provision of law, is void."

13        40.    Plaintiffs further allege that the failure to follow the specific transfer and

14   assignment requirements of the PSA are fatal to Defendant Wells Fargo's claim to own

15   the Note.  Plaintiffs further allege that under applicable New York Trust Law, this defect

16   may not now be remedied, and may never be remedied in the future.

17        41.    The issue of defective assignments in the securitization process has been

18   the focus of state and federal court case decisions[2], Attorneys General investigations,

19   and Congressional reports.  On each level, state and federal entities have concluded that

20

21   [2] *U.S. Bank vs. Ibanez*, 458 Mass. 637 (2011) (invalidating two foreclosure sales, finding
that the U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of

22   securitized mortgages at the time of foreclosure).  (The court rejected the banks'
argument that the mortgages were transferred via the applicable Pooling and Servicing

23   Agreement and made clear that, to foreclose, the banks must prove a complete and
unbroken chain of title from origination to securitization trust in full compliance of the

24   PSA, i.e. establish ownership of the mortgage).  *See also, Horace v. LaSalle Bank NA*,
Case No. CV 08-362 (Cir. Ct. Russell Cty., Ala. March 30, 2011) (Order) (granting a

25   permanent injunction preventing LaSalle Bank from foreclosing and deciding that
LaSalle Bank did not comply with the PSA and New York Trust Law in attempting to

26   obtain assignment of the homeowner's note and mortgage; *Hendricks v. U.S. Bank NA*,
Case No. 10-849-CH (Washtenaw Cty. Trial Ct., Mich., June 6, 2011) (Opinion and

27   Order Denying in Part and Granting in Part Defendant's Motion for Summary
Disposition and Granting Plaintiff's Motion for Summary Judgment) (holding that the

28   note was not transferred to the trustee bank on or before the closing date and the note
did not include all intervening indorsements as required by the PSA.

1    a failure in the securitization process results in a break in the chain of title and the

2    inability of the Securitized Trust to enforce the Note and Deed of Trust.

3        42.    Attorney General of Nevada, Catherine Cortez Masto, and Attorney

4    General of California, Kath, have recently agreed to launch a joint investigation of

5    residential mortgage foreclosure practices, including failed securitizations.[3]  Attorney

6    General Masto has filed a complaint against Bank of America in United States District

7    Court in Reno, in which her office alleges:

8        Bank of America misrepresented, both in communications with Nevada

9        consumers and in documents they recorded and filed, that they had authority

10       to foreclose upon consumers' homes as servicer for the trusts that held these

11       mortgages.  Defendants knew (and were on notice) that they had never

12       properly transferred [text redacted] these mortgage to those trusts, failing to

13       deliver properly endorsed or assigned mortgage notes as required by the

14       relevant legal contracts and state law. Because the trusts never became

15       holders of these mortgages, Defendants lacked authority to collect or

16       foreclose on their behalf and never should have represented they could.[4]

17       43.    Congress has recognized the importance of the trust's strict compliance

18   with the PSA and New York Trust Law.  Specifically, the Congressional Oversight

19   Panel, in its November 16, 2010 Oversight Report Examining the Consequences of

20   Mortgage Irregularities for Financial Stability and Foreclosure Mitigation determined,

21   "[I]f the transfer for the notes and mortgages did not comply with the PSA, the transfer

22   would be void, and the assets would not have been transferred to the trust." *See* **Exhibit**

23   **"D"**, attached hereto is a true and correct copy of the Congressional Oversight Panel's

24

25   [3] *See* California and Nevada Join Forces in Mortgage Probe, Alegandro Lazo, Los
     Angeles Times, December 7, 2011, available at
26   http://articles.latimes.com/2011/dec/07/business/la-fi-mortgage-probe-20111207.

27   [4] *See* State of Nevada v. Bank of America Corporation et al., Case No. 3:11-cv-00135-
     RCJ (RAM), Second Amended Complaint, Document 63-1, at paragraph 6, available at:
28   http://graphics8.nytimes.com/packages/pdf/business/SecondAmendedComplaint.pdf.
     See also paragraphs 53 and 137-149

1   November 16, 2010 Oversight Report Examining the Consequences of Mortgage

2   Irregularities for Financial Stability and Foreclosure Mitigation ("Congressional

3   Oversight Report").

4       44.    California law requires the trustee of the beneficiary or their authorized

5   agents to follow certain procedures in order to enforce a power of sale clause in a deed

6   of trust.  See Cal. Civ. Code section 2924(a). [5]  A foreclosing party must strictly comply

7   with the statutory requirements, otherwise the sale is invalid.

8       45.    In California, the deed of trust follows the note.  Hence, an assignment or

9   transfer of the note carries with it the deed of trust.  See Cal. Civ. Code section 2936.

10      46.    As such, in California, a deed of trust can only be foreclosed by the owner

11  of the note. [6]

12      47.    Plaintiffs' Loan was not transferred to the Bear Stearns Trust because

13  Defendants and the Depositor did not comply with the provisions of the PSA with

14  respect to Plaintiffs' Loan.  In fact, the Mortgage was not sold, transferred, or granted to

15  any of the Defendants pursuant to the PSA or otherwise.  The legally observable effect

16  of this failure is that Plaintiffs' Loan is not now, and can never be, an asset of the Bear

17  Stearns Trust as a matter of law.  Congress has even recognized this fact: "PSAs

18  generally require that the loans transferred to the trust not be in default, which would

19  prevent the transfer of any non-performing loans to the trust now.  Furthermore, PSAs

20  frequently have timeliness requirements regarding the transfer in order to ensure that the

21

22  [5] *See e.g. Bank of America v. LaJolla Group II*, 129 Cal. App. 4th 706, 713-714 (2005)
(holding the sale void where the beneficiary had no rights to sell because the trustor was
23  current on an agreement to cure); Miller v. Cote, 127 Cal. App. 3d 888, 894 (1982)
(invalidating the sale).
24  [6] *Santens v. Los Angeles Fin. Co.*, 91 Cal.App., 2d 197, 201-202 (Cal. Ct. App. 1949)
(resolving who had a superior interest in the property at issue—a judgment creditor
25  who executed or the owner of the note and deed of trust and deciding in favor of the
owner of the note and deed of trust because he acquired his rights before the judgment
26  creditor.  *See also Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954)
(approving the holding in Stantens that the deed of trust can only be foreclosed by the
27  owner of the note).  *Cf. Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256 (Cal.
Ct. App. 2011) (implicitly agreeing that the beneficiary must own the note to authorize
28  the trustee to proceed with a foreclosure but ruling that MERS had the authority , as
agent, to assign the note and deed of trust).

1    trusts qualify for favored tax treatment." Congressional Oversight Report.  *See* **Exhibit**
2    **"D"**.

3         48.    Plaintiffs allege that Defendants do not own the Note, have no legal
4    authority to enforce the Note or Deed of Trust, and have no legal authority to exercise
5    the power of sale under Cal. Civ. Code § 2924, et seq.

6         49.    Plaintiffs allege that none of the Defendants or their agents have a
7    beneficial interest in the Property and cannot enforce the underlying debt or Deed of
8    Trust.  As such, Defendants are in violation of the Cal. Civ. Code § 2924 and any notice
9    of default issued is void *ab initio*.

10        50.    Despite this failure to assign, transfer, and grant Plaintiffs' Mortgage to
11   Wells Fargo, Defendants have made numerous attempts to collect on Plaintiffs'
12   mortgage and have now resorted to cover-up this fatal defect by executing and recording
13   a fabricated Corporation Assignment of Deed of Trust ("Assignment") and Substitution
14   of Trustee ("Substitution").

15        51.    On or around November 5, 2009, a Notice of Default ("NOD") was
16   recorded and executed on the Property.  The NOD was purportedly executed by "Lucille
17   McCord" on behalf of EMC Mortgage Corporation ("EMC Mortgage") as beneficiary.
18   *See* **Exhibit "E,"** attached hereto is a true and correct copy of the NOD.  EMC
19   Mortgage has never had a beneficial interest in the Deed of Trust and thus was not a
20   proper beneficiary when the Notice of Default was recorded.

21        52.    On or around September 17, 2010, a purported Assignment was recorded in
22   Orange County Recorder's office.  *See* **Exhibit "F,"** attached hereto is a true and correct
23   copy of the Assignment.  The Assignment was allegedly executed on November 18,
24   2009 by "Greg Allen," purportedly as "Vice President" of Mortgage Electronic
25   Registration Systems, Inc. ("MERS") as nominee for Southstar.  On information and
26   belief, Southstar failed and went out of business in mid-2007.  The Assignment alleges
27   that for "Value Received" MERS granted, assigned, and transferred to Wells Fargo all
28   beneficial interest in the Deed of Trust, together with "the Note or Notes therein

1  described or referred to, the money due and to become due thereon with interest, and all
2  rights accrued or to accrue under said Deed of Trust." The Assignment purports to
3  transfer interest to Wells Fargo as Trustee for the Bear Stearns Trust in 2009, **two years**
4  **after** the Closing Date of the Bear Stearns Trust. Plaintiffs allege Wells Fargo and/or
5  JPMorgan acted with the intent to illegally collect Plaintiffs' payments with the
6  knowledge that the Assignment did not in fact legally grant, assign, or transfer
7  Plaintiffs' interest to Wells Fargo per the PSA.

8      53.    On or around September 17, 2010, a Substitution was also recorded with
9  the Orange County Recorder's office. The Substitution purports to substitute National
10 for Kirk K. Smith as trustee under the Deed of Trust. The Substitution was allegedly
11 executed on November 18, 2009 by "Greg Allen." However, Greg Allen executes the
12 Substitution as "Vice President" of EMC Mortgage on behalf of Wells Fargo and *not* as
13 Vice President of MERS as he did under the Assignment. Plaintiffs allege that the
14 purported transactions in the Assignment and Substitution never occurred, and that Greg
15 Allen lacked the corporate authority to sign on behalf of MERS and/or EMC Mortgage.
16 *See* **Exhibit "G,"** attached hereto is a true and correct copy of the Substitution.

17     54.    On or around September 17, 2010, a Notice of Trustee's Sale ("NOTS")
18 was also recorded on Plaintiffs' Property. The NOTS was executed on September 15,
19 2010 by "Nichole Alford" as purported "Trustee Sales Representative" for National.
20 *See* **Exhibit "H,"** attached hereto is a true and correct copy of the NOTS.

21     55.    On February 10, 2011, National sold Plaintiffs' home at auction to Wells
22 Fargo. *See* **Exhibit "I,"** attached hereto is a true and correct copy of the February 22,
23 2011 Trustee's Deed Upon Sale.

24     56.    A recent audit commissioned by the San Francisco Office of the Assessor-
25 Recorder reviewed 382 foreclosures from 2009 to 2011 and found that 84% contained at
26 least one clear violation of California's foreclosure laws. The audit concluded:

27         If there is one lesson to take away from this report it is that, with so many
28         homes being foreclosed and with so little oversight, California's foreclosure

SECOND AMENDED COMPLAINT                                                           17

1    process appears utterly broken.  What is at stake here is more than merely

2    fairness and minimal due process.   Foreclosures impact not only

3    homeowners but also entire communities and housing markets.  The

4    integrity of California's record title system is also at stake because the

5    validity of title for subsequent purchasers is dependent on those that precede

6    it.

7  *See* **Exhibit "J"**, attached hereto is a true and correct copy of the audit.

8       57.     On or around September 7, 2011, after the initial investigation, Plaintiffs

9  sent a Qualified Written Request ("QWR") to JPMorgan pursuant to the Real Estate

10  Settlement Procedures Act, 12 U.S.C. § 2605(e), in which they advised JPMorgan that

11  they believed their account was in error due to, among other things, improper fees and

12  improper allocation of payments.  The QWR also requested information regarding their

13  loan.  *See* **Exhibit "K,"** attached hereto is a true and correct copy of Plaintiffs'

14  Qualified Written Request.  The Dodd-Frank Wall Street Reform and Consumer

15  Protection Act ("Dodd-Frank Act")[7] requires that the servicer provide an

16  acknowledgement of receipt of the QWR within five days of receipt and to substantively

17  respond within thirty business days of receipt.  In violation of RESPA and the Dodd-

18  Frank Act, JPMorgan failed to provide a complete response.  *See* **Exhibit "L,"** attached

19  hereto is a true and correct copy of a letter from counsel for JPMorgan purporting to

20  respond to Plaintiffs' QWR.  Although the letter promises to provide documents which

21  relate to Plaintiffs' Loan, Plaintiffs have received no such documents.

22  _____

23      [7] The Dodd-Frank Act was signed into law on July 21, 2010.  The Act amended
    several statutes including 12 U.S.C. § 2605.  The Act amended 12 U.S.C. § 2605 by
    shortening the deadline to acknowledge a QWR from fifteen days to only five days and

24  shortening the substantive response deadline from sixty days to thirty days.  There is a
    fifteen day extension allowed if the borrower is notified of the extension and the reasons

25  for the delay.  In addition, the Dodd-Frank Act requires a servicer of a federally related
    mortgage to "respond to a QWR within 10 business days to a request from a borrower to

26  provide the identity, address, and other relevant contact information about the owner or
    assignee of the loan." H.R. 4173 section 1463(a).  The Dodd-Frank Act provides

27  available damages to an individual for failing to respond to a QWR request.  Available
    damages were increased from actual damages plus $1,000 to actual damages plus $2000.

28  The Dodd-Frank Act also prohibits various servicing practices and made a few changes
    to TILA.

58.     Plaintiffs do not dispute that they owe money on their mortgage obligation. Rather, Plaintiffs disputes the amount owed and seeks the Court's assistance in identifying who the true creditor is of their Note and Deed of Trust.

59.     Plaintiffs paid the wrong creditor and all payments made to the Bear Stearns Trust must be disgorged and refunded.

60.     Plaintiffs have been damaged as their credit and credit score were severely damaged.

61.     The title to Plaintiffs' Property has been slandered, clouded, and its salability has been rendered unmarketable.

62.     Plaintiffs must seek the Court's assistance to identify their true creditor as they risks not obtaining clear title to this property should they be able to workout a payment plan or forbearance.

63.     Plaintiffs do not know who the current beneficiary of their Note and Mortgage actually is, such that they are now subject to double financial jeopardy.

64.     Plaintiffs are not required to allege a credible offer of tender because they attack the validity of the underlying debt, not mere technical discrepancies in the foreclosure process.[8]

**FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE**

---

[8] A tender is *not* required when the action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D.Cal June 24, 2011) (emphasis added) *citing Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957). *See also Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("…requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan."). In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments, it would be *illogical and inequitable* to require Plaintiff to actually tender. *See Vogan v. Wells Fargo Bank*, No. CV 11-2098-JAM-KJN, at *14-15 (E.D. Cal. Nov. 17, 2011).

## STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]

### [Against All Defendants and Doe Defendants]

65.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

66.   Section 2201(a) of Title 28 of the United States Code states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

67.   Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.[9]

---

[9] It is axiomatic that a cause of action for declaratory relief serves the purpose of adjudicating *future* rights and liabilities between parties. *See Cardellini v. Casey*, 181 Cal. App. 3d 389 (1986) [Emphasis added]; *Bachis v. State Farm Mutual Auto. Ins. Co.*, 265 Cal. App. 2d 722 (1968).

68.     Documents in the public record reflect and Wells Fargo has not refuted that Wells Fargo asserts a secured enforceable interest in, and a perfected lien, against, the Plaintiffs' Note, Deed of Trust, and Property.

69.     Plaintiffs dispute Wells Fargo's claims on the ground that any purported transfer and/or assignment to the Bear Stearns Trust res was invalid and is a legal nullity.  Thus, Plaintiffs allege that Wells Fargo does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

70.     On or around November 18, 2009, Wells Fargo claims they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiffs' Note, Deed of Trust, and Property.  Plaintiffs dispute this fact.

71.     Thus, the competing allegations made by Plaintiffs and Defendants, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.[10]

72.     In addition, the harm by Defendants is ongoing and includes the imminent initiation of eviction proceedings against Plaintiffs.  Therefore, as this claim relates to future harm, Plaintiffs' declaratory relief claim is cognizable as an independent cause of action.[11]

73.     Accordingly, Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants have any right or interest in Plaintiffs' Note, Deed of Trust, or the Property.

---

[10] "Declaratory relief is only appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

[11] *See Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.").

74.     Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiffs will be denied the opportunity to identify their true and current creditor/lender and negotiate with them; (2) they will be denied the right to conduct discovery and have Wells Fargo's and/or JPMorgan's claims verified by a custodian of records who has personal knowledge of the Loan and all transactions related to it; and (3) they will be denied the opportunity to discover the true amount they still owes minus any illegal costs, fees, and charges.

75.     Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Wells Fargo's claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right, title, or interest in Plaintiffs' Property.

76.     Furthermore, the conduct of Wells Fargo, JPMorgan, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION – QUASI CONTRACT

### [Against Wells Fargo, JPMorgan, and Doe Defendants]

77.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

78.     Wells Fargo attempted but failed to become a party to the Note and Deed of Trust when it was purportedly assigned Southstar's interest in Plaintiffs' Note and Deed of Trust.  Wells Fargo and/or JPMorgan demanded monthly mortgage payments from Plaintiffs starting in August 30, 2006 and continued to collect payments from Plaintiffs for approximately five years.  Plaintiffs reasonably relied upon Wells Fargo and/or JPMorgan's assertion that they were entitled to payments.

79.    Wells Fargo and/or JPMorgan knowingly accepted payments and retained them for their own use knowing that Wells Fargo and/or JPMorgan did not acquire an interest in Plaintiffs' Note, such that they could accept or keep Plaintiffs' payments.  It would be inequitable for Wells Fargo and/or JPMorgan to retain the payments it received from Plaintiffs which they did not have legal authority to collect.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their or her former position by return of the thing or its equivalent in money.

80.    Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."

81.    The obligations to Southstar under the Deed of Trust were fulfilled when Southstar received the balance on the Note as proceeds of the sale of Plaintiffs' Note and Mortgage to a presently unknown entity.  Wells Fargo and/or JPMorgan have been unjustly enriched by collecting monthly payments from Plaintiffs when they have no interest their Note or Deed of Trust.

82.    Plaintiffs seek restitution for any payments they made to Wells Fargo and JPMorgan that were not paid to the lender or beneficiary, if any.

## THIRD CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692e

### [Against Wells Fargo and Doe Defendants]

83.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

84.    Defendant Wells Fargo, acting as the trustee of the Bear Stearns Trust, is in the business where the principal purpose is to collect debts on behalf of the investors in the Bear Stearns Trust.  Wells Fargo attempted to collect Plaintiffs' debt obligation on

1   behalf of the Bear Stearns Trust investors and thus is a debt collector pursuant to the

2   Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means

3   any person who uses any instrumentality of interstate commerce or the mails in any

4   business the principal purpose of which is the collection of any debts, or who regularly

5   collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

6   owed or due another." 15 U.S.C. § 1692a(6).

7        85.   Federal law prohibits the use of "any false, deceptive, or misleading

8   representation or means in connection with the collection of any debt… including the

9   false representation of… the character, amount, or legal status of any debt… and the

10  threat to take any action that cannot legally be taken…" 15 U.S.C. §1692e(2)(A), (5).

11       86.   Wells Fargo attempted to collect on the Note under false pretenses, namely

12  that it was assigned Plaintiffs' debt when in fact it was not.

13       87.   Wells Fargo threatened to take actions, namely engaging in collection

14  activities, that cannot legally be taken by it.

15       88.   As alleged herein, Plaintiffs' Note was not properly transferred to Wells

16  Fargo, who sought to cause its purported authorized agents, including JPMorgan, to

17  collect mortgage payments and engage in other unlawful collection practices.

18       89.   On information and belief, Wells Fargo does not have a perfected security

19  interest in Plaintiffs' Note such that it can enforce Plaintiffs' obligation or collect

20  mortgage payments.

21       90.   Plaintiffs allege that Wells Fargo falsely represented the status of Plaintiffs'

22  debt and Wells Fargo's and its agents' ability to enforce Plaintiffs' debt obligation, in

23  which they have no pecuniary, equitable, or legal interest.

24       91.   The conduct described above by Wells Fargo was malicious because Wells

25  Fargo and its agents knew that they were not acting on behalf of the current pecuniary

26  beneficiary of the Note and Mortgage. However, despite such knowledge, Wells Fargo

27  and its agents continued to demand and collect Plaintiffs' mortgage payments.

28

92.     On information and belief, Wells Fargo engaged in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the mortgage Loan, Wells Fargo failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

93.     On information and belief, at all times material, Wells Fargo had, and has, actual knowledge that Plaintiffs' account was not accurate, but that Plaintiffs would continue to make further payments based on Defendants' inaccurate account.  Plaintiffs made payments based on these improper, inaccurate, and fraudulent representations.

94.     The foregoing acts and omissions of Wells Fargo and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiffs.

95.     Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692e because Wells Fargo and its agents fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and that they were falsely representing to Plaintiffs that the character and amount of money Plaintiffs still owed on their debt.[12]

96.     As a result of Wells Fargo's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each and every Defendant herein.

---

[12] "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 905 (2009) citing *Santa Maria*, 202 F.3d at 1178; see also *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the Plaintiffs' control made it impossible to file a claim on time.") (citation omitted).